FILED

2018 Nov-12  PM 02:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

|                              |     |                                   |
|------------------------------|-----|-----------------------------------|
| MARK DUKE, et al.,           | *   |                                   |
|                              | *   |                                   |
| Plaintiffs,                  | *   |                                   |
|                              | *   |                                   |
| vs.                          | *   | Civil Action No: 4:14-cv-01952-VEH |
|                              | *   |                                   |
| COMMISSIONER JEFFERSON S.    | *   |                                   |
| DUNN, et al.,                | *   |                                   |
|                              | *   |                                   |
| Defendants.                  | *   |                                   |

## PLAINTIFF JOHN MILLER'S RESPONSE TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, named plaintiff John Miller (hereinafter, the "Responding Plaintiff") hereby responds to the First Set of Interrogatories propounded by the defendants as follows:

**GENERAL RESPONSES AND OBJECTIONS**

Each of the Responding Plaintiffs' responses, in addition to any specifically stated objections, is subject to and incorporates the following general responses and objections. The assertion of the same, similar, or additional objections, or a partial response to any individual request does not waive any of the plaintiffs' general responses and objections.

1

1.     The following responses reflect the current state of the plaintiffs' knowledge, understanding and belief respecting matters about which inquiry has been made.  The plaintiffs expressly reserve their right to supplement or modify these responses with such pertinent information as they may hereafter discover or as may be informed by the opinions of experts retained by the parties to testify in the trial of this matter, and will do so to the extent required by the Federal Rules of Civil Procedure.  The plaintiffs expressly reserve the right to rely on, at any time, including trial, subsequently discovered documents and/or materials that have been produced promptly upon discovery.

2.     The plaintiffs object to any interrogatory that seeks information constituting or containing information concerning communications between the plaintiffs and their counsel, which are protected by the attorney-client privilege.

3.     The plaintiffs object to any interrogatory that seeks information constituting or containing information prepared in anticipation of or as a result of litigation or which is otherwise protected by the work product doctrine or other available privilege or protection.

4.     The inadvertent provision of information or the production by the plaintiffs of documents pursuant to Fed. R. Civ. P. 33(d) containing information protected from discovery by the attorney-client privilege, work product doctrine or

any other applicable privilege, shall not constitute a waiver of such privileges with respect to that information or those or any other documents. In the event that inadvertent production occurs, the Defendants shall return all inadvertently produced documents to the plaintiffs upon request, and/or shall make no use of the contents of such information or documents nor premise any further discovery on information learned therefrom.

5.     The plaintiffs object to any interrogatory to the extent that it purports to impose upon them any obligation beyond those imposed by the Federal Rules of Civil Procedure, including, but not limited to, any interrogatory that exceeds the scope of Federal Rules of Civil Procedure 26(b) and 33.

6.     The plaintiffs object to these interrogatories to the extent that they are over-broad, unduly burdensome, vague, ambiguous, confusing, require speculation to determine their meaning or use imprecise specifications of the information sought.

7.     The plaintiffs object to any interrogatory to the extent that it seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

8.     The plaintiffs object to any interrogatory as unduly and unnecessarily burdensome to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and,

therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

9.      None of the objections or responses contained herein is an admission concerning the existence of any documents or materials, the relevance or admissibility of any documents, materials or information, or the truth or accuracy of any statement or characterization contained in Defendants' Second Set of Interrogatories. The plaintiffs' written responses are made without waiving, but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy, materiality or any other proper grounds, to the use of the information provided herein, in whole or in part, in any subsequent proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other discovery requests involving or relating to the subject matter of these requests; and (c) the right at any time to revise, correct, add or clarify any of the responses provided herein.

10.      The plaintiffs object to any interrogatory that seeks information that is already in the defendants' possession.

11.      Unless otherwise indicated, the plaintiffs will not provide information encompassed by their general responses and objections or by their specific objections set forth below.

**SPECIFIC OBJECTIONS AND RESPONSES :**

**INTERROGATORY NO. 1**

*State in detail the circumstances of your developing and bringing your alleged claims against Defendants in this action including but not limited to when you initiated contact with any of your attorneys of record; how you made that initial contact; and the dates, times, and durations of all communications with any of your attorneys of record prior to bringing your claims in this action.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Contact was made with my attorneys on April 3, 2015.  The contents of any contact with my attorneys is privileged.

**INTERROGATORY NO. 2**

*DESCRIBE every transaction, altercation, event, or instance which resulted in or lead to a criminal conviction against you.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

On June 27, 2001, I pleaded guilty to Burglary in the Third Degree in Morgan County. On October 25, 2004, I pleaded guilty to Theft of Property in the first degree in Morgan County. I also have a federal conviction for possession of a firearm out of

Morgan County that runs concurrently with my state charge.

## INTERROGATORY NO. 3

***IDENTIFY*** *all gangs to which you currently belong or have belonged while incarcerated at any time in an ADOC facility.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

I assert my Fifth Amendment right against self-incrimination to the extent that this question asks about whether I identify with a group engaging in criminal or violent activity.

## INTERROGATORY NO. 4

***IDENTIFY*** *each individual or entity that has been formally documented as your enemy,* ***IDENTIFY*** *each individual or entity that you consider to be your enemy regardless of formal documentation, state in detail the reasons you consider each individual or entity to be your enemy,* ***DESCRIBE*** *all instances in which you have made a request to document an individual or entity at St. Clair or otherwise, and* ***DESCRIBE*** *all instances in which a request from you to classify an individual or entity as an enemy has been denied, rejected, or otherwise not acted upon.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Jamal Denson is designated as my enemy. I requested that his brother, Osmar Denson, also be designated as an enemy but this has not occurred. To my knowledge, no one else is currently formally documented as my enemy and there is no one else I currently consider my enemy.

## INTERROGATORY NO. 5

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in the "Preliminary Statement" and related contentions in your Complaint that St. Clair is mismanaged; poorly lead; overcrowded; lacking security including but not limited to having "broken and nonfunctioning locks on the majority of cell doors" and "cube officers" that "are frequently asleep or are otherwise inattentive;" unsafe; and operating in a "culture where violence is tolerated," where the homicide rate is "extraordinarily high," and where "stabbings and assaults" occur weekly.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 12-1, 23-39, 61-64, and 65-67, and to Plaintiff's response to Interrogatories 12, 15, 16-19. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Many people in segregation are able to open their doors by "tricking" them. It is very infrequent that we see officers on the block and we have to scream for their

attention in case of emergencies. I have seen officers sleep in the cube. And even though I have not lived in general population, I understand that locks do not work and living assignments are not enforced. The outside doors of dorms and cell blocks are supposed to be closed and locked unless there is movement happening, but instead they are frequently left open, even late at night.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

The following prisoners were injured or killed when they were assaulted by other prisoners: Victor Russo, Anthony Zeller, Michael McGregor, Williams Casey, Jamal Woods, James Dorriety, Nakia Echols, David Beech, Jeffrey Peoples, Brandon Ladd, Larry Hill, Bradley Gant, Micah Mays, Justen Stinson, Elliot Blounty, Derrick LaKeith Brown, Dugan Clayton, James Harnage, Michael Stamper, Mark Archer, Dale Gilley, Christopher Chapple, Mark Archer, Joseph Royal, Timothy Duncan, Jodey Waldrop, Marquette Cummings, Jammy Bell, John Rutledge, Jabari Bascomb, Alister Cook, Terrell French, Allan Williams, Terry Rivers a/k/a Muhammad Al-Ameen, Anthony Moss, Derrick White, Antonio Cheatham, Michael Mays, Mark Duke, Jovar Gamble, Orlando Porch, Willie Brantley, Derrick Averhart, Freddie James Stallworth, Christopher Chapple, Benjamin Howlet, and Stanley Jo Flambo.

I am aware of the incidents where the following prisoners were injured when they were assaulted by DOC staff: Gerald Vann, Darius Mines, Bernard Abney, Unteyus Stephens, Xabrian Austin, Maurice Green, Gerald Ingram, Demeteric Pritchett, Shakil Gamble, Zendarious White, Larry Nesbitt, Justin Jackson, Antonio Johnson, Marcus Webb, Tommy Demming, James Howard, Jamie Abrams, Matthew Owens, Joseph Royal, Terrence Seay, Arlo Townsand, Michael Nelson, Charlie Bennett, Joseph Henderson, Jermaine Tillman, Dale Gilley, Venture Harrison, James Bonds, Joseph Shack, Ricardo Eason, and Darrious Mabry.

I am aware that DOC staff refused to respond to the following prisoners' concerns for their safety in assigned housing: Robert Woods, Dale Gilley, James Edwards, and Tim Jones.

## INTERROGATORY NO. 6

*DESCRIBE each and every transaction, altercation, event, or instance in which or as a result of which you have been injured by an ADOC employee while at St. Clair; have requested protection or a housing reassignment for safety while at St. Clair; have been the victim of excessive force while at St. Clair whether physical or chemical; have made, possessed, bought, sold, traded, or otherwise been involved with contraband while at St. Clair; have been verbally abused; have been the recipient or victim of physically aggressive "intervention" or "arbitrary and unpredictable bullying tactics;" or have tampered with, tricked, jammed, removed, or otherwise affected a door or lock in or at St. Clair.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

I assert my Fifth Amendment right against self-incrimination to the extent that this interrogatory asks whether I have "made, possessed, bought, sold, traded, or otherwise been involved with" contraband for which there is criminal liability. I was injured because ADOC staff failed to adequately protect me from the prisoner who sexually assaulted me.  The locks on the cell doors were broken before I became incarcerated at St. Clair.

## INTERROGATORY NO. 7

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; IDENTIFY each and every document and oral communication; and DESCRIBE each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in the "Preliminary Statement" and related contentions in your Complaint that "drugs and other contraband . . . are prevalent," that "in many cases contraband . . . is brought into [St. Clair] and sold to prisoners by officers or [ADOC] staff," that correctional officers at St. Clair have been involved in "widespread corruption," and that*

9

*correctional officers at St. Clair have been able to "extort money and favors from prisoners in exchange for drugs."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 65-67, and to Plaintiff's response to Interrogatories 9, 10, and 12. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Drugs are one of the major contributors to violence at St. Clair Correctional Facility. Serious drugs, including methamphetamine, methadone, heroin, suboxone, and marijuana, and drug abuse and addiction among prisoners is widespread. Drugs are also pervasive in H dorm and in segregation. Many prisoners are in debt and extorted by other prisoners as a consequence of their drug addictions. I witness drug use in the facility every day and have also witnessed prisoners lose consciousness due to drug abuse. A neighbor in a cell next door, Derrick Collins, overdosed on drugs while in segregation.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

A number of officers at St. Clair Correctional Facility proliferate and profit off

10

of contraband. Officer Woodall was involved in bringing drugs into St. Clair Correctional facility in 2007. Officer Lorenzo Looney was terminated and criminally charged after bringing cell phones into St. Clair Correctional Facility in 2013. Officer Jamychal Howard was terminated and pleaded guilty to Promotion of Prison Contraband Second Degree and Possession of Controlled Substances in 2013. Officers Tommie Borden and Mark Clark were both convicted of Promotion of Prison Contraband for bringing drugs into the prison in 2007. Additionally, at a minimum, several additional officers have been terminated and criminally charged for involvement in the drug trade.

A number of individuals have observed the prevalence of contraband or the corruption of officers at St. Clair Correctional Facility. These individuals include: Mark Duke; James Edwards; Terrell French; Maxwell Gray; Fred Kirksey; Michael Mays; Larry McGee; Darves Thornton; Jermaine Tillman; Robert Woods; Christopher Wyatt.

Plaintiff's Documents:

State v. Howard, No. 2013-313.00 (St. Clair Cty. Cir. Ct., Dec. 4, 2013); State v. Looney, No. 2013-115.00 (St. Clair Cty. Cir. Ct., Apr. 3, 2013); State v. Clark, No. 2007-203.00 (St. Clair Cty. Cir. Ct., May 8, 2007); State v. Borden, No. 2007-202.00 (St. Clair Cty. Cir. Ct., May 8, 2007).

## INTERROGATORY NO. 8

*DESCRIBE all transactions, altercations, events, or instances in which you or another member of the putative class have been involved, which you or another member of the putative class have witnessed, or of which you or another member of the putative class otherwise have knowledge that occurred in or at St. Clair and involved contraband whether reported or unreported, or resulted in disciplinary action or inquiry by or against any ADOC employee or St. Clair inmate.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and

11

obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 65-67, and to Plaintiff's response to Interrogatories 7, 9, and 11. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

I assert my Fifth Amendment privilege against self-incrimination to the extent that this interrogatory requests information regarding my current or past possession of contraband items for which there is potential criminal liability. I am aware, through my own observations, that many prisoners have knives and that many prisoners are using drugs. The man who assaulted me put a knife to my throat when he sexually assaulted me.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

I am aware that the assaults of, and incidents involving, the following prisoners involved contraband: Anthony Zeller, Michael McGregor, Jodey Waldrop, William Casey, Jamal Woods, James Dorriety, Nakia Echols, David Beech, Brandon Ladd, Larry Hill, John Miller, Micah Mays, Justen Stinson, Elliot Blount, Derrick LaKeith Brown, Dugan Clayton, John Harnage, Michael Stamper, Frankie Johnson, Victor Russo, Alister Cook, Marquette Cummings, Terrell French, John Rutledge, Terry Rivers a/k/a Muhammad Al-Ameen, Jabari Bascomb, Derrick White, Michael Mays, Jovar Gamble, Jammy Bell, Willie Brantley, Derrick Averhart Robert Woods, Freddie James Stallworth, Christopher Chapple, Benjamin Howlet, and Stanley Joe Flambo. I am aware that Darrious Mabry was assaulted by an officer because he had contraband (extra cake).

In addition to Responding Plaintiff, a number of individuals have witnessed or

12

have knowledge of transactions, altercations, events, or instances that have involved contraband at St. Clair Correctional Facility. These individuals include: Michael Christianson; Keon Hardy; Fred Kirksey; Terrell French; Matthew Owens; Larry McGee; Maxwell Gray; Greg Brown; Timothy Gayle; David Crenshaw; Demetric Pritchett; Michael Craig; Antonio Cheatham; James Edwards; Tommy Demming; Mark Archer; Venture Harrison; Frankie Johnson; Reontay Harley; George Presley; Tommy Demming; Robert Woods; and Larry McGee.

## INTERROGATORY NO. 9

*DESCRIBE each and every transaction, altercation, event, or instance in which or as a result of which you have, any other member of the putative class has, any correctional officer has, or any other individual or entity at St. Clair has made, possessed, bought, sold, traded, imported, smuggled, ordered, requested, or otherwise been involved with Contraband while at St. Clair.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 65-67, and to Plaintiff's response to Interrogatories 7 and 8. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

I assert my Fifth Amendment right against self-incrimination to the extent that this interrogatory asks me to describe each and every transaction, altercation, event, or instance in which I have "made, possessed, bought, sold, traded, or otherwise been involved with" contraband for which there is criminal liability. I am aware, through

my own observations, that many prisoners have knives and that many prisoners are using drugs.  I was sexually assaulted at knife-point.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

I am aware that the assaults of, and incidents involving, the following prisoners involved contraband: Anthony Zeller, Michael McGregor, Jodey Waldrop, William Casey, Jamal Woods, James Dorriety, Nakia Echols, David Beech, Brandon Ladd, Larry Hill, John Miller, Micah Mays, Justen Stinson, Elliot Blount, Derrick LaKeith Brown, Dugan Clayton, John Harnage, Michael Stamper, Frankie Johnson, Victor Russo, Jodey Waldrop, Alister Cook, Marquette Cummings, Terrell French, John Rutledge, Terry Rivers a/k/a Muhammad Al-Ameen, Jabari Bascomb, Derrick White, Allan Williams, Michael Mays, Mark Duke, Jovar Gamble, Jammy Bell, Willie Brantley, Derrick Averhart, Robert Woods, Freddie James Stallworth, Christopher Chapple, Benjamin Howlet, and Stanley Joe Flambo. Darrious Mabry was assaulted by an officer because he had contraband (extra cake). Prisoners make knives from metal pieces of their bedframes in their cells but the guards do not pay attention when pieces of a bed are missing.

In addition to Responding Plaintiff, a number of individuals have witnessed or have knowledge of transactions, altercations, events, or instances that have involved contraband at St. Clair Correctional Facility. These individuals include: Michael Christianson; Keon Hardy; Fred Kirksey; Terrell French; Matthew Owens; Larry McGee; Maxwell Gray; Greg Brown; Timothy Gayle; David Crenshaw; Demetric Pritchett; Michael Craig; Antonio Cheatham; James Edwards; Tommy Demming; Mark Archer; Venture Harrison; Frankie Johnson; Reontay Harley; George Presley; Tommy Demming; Robert Woods; Larry McGee; Darves Thornton; and Christopher Wyatt.

## INTERROGATORY NO. 10

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction,*

*altercation, event, or instance that in any way supports or tends to support your contentions in the "Preliminary Statement" and related contentions in your Complaint that "policies" have resulted in Defendants "eliminating or severely cutting back mental health and drug treatment services, rehabilitative programming, and removing books and other constructive activities from the housing units" and that those actions create "an oppressive and monotonous environment that accommodates abuse and violence, as well as drug abuse in a population with a high rate of mental illness and prior addiction."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 61-64, and 68, and to Plaintiff's response to Interrogatories 7-9. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Defendants do not conduct an adequate mental health evaluation of prisoners who arrive at St. Clair Correctional Facility. Defendants have restricted access to mental health counseling and fail to monitor the treatment of individuals who are prescribed medication for their mental illness.

Prisoners at St. Clair Correctional Facility who struggle with mental illness are not properly treated or assigned to appropriate housing. Prisoners at St. Clair Correctional Facility who struggle with mental illness are frequently free to move in and out of general population. Defendants have restricted access to mental health

15

counseling.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Prisoners in general population who struggle with mental illness are often victimized. Prisoners in general population who struggle with mental illness have been observed drinking out of the trash, drinking out of the toilets and smearing feces on the walls. A number of prisoners with mental health issues are known to both staff and prisoners at St. Clair Correctional Facility. These men include:

1.  Sylvester Hardy, a prisoner at St. Clair Correctional Facility who struggles with mental illness, was present in general population at St. Clair. Mr. Hardy's mental illness contributed to an incident at the medical infirmary at Staton Correctional Facility, during which hostages were taken.

2.  Henry Young, a prisoner at St. Clair Correctional Facility with mental illness, is often sexually assaulted in exchange for negligible personal items. Witnesses have observed Defendants and other prison personnel joking about Mr. Young being sexually assaulted.

3.  Charles Hastings is a prisoner at St. Clair Correctional Facility who struggles with severe mental health and substance abuse issues that have manifested in violence and self-harm.

4.  Corwin Russell is a prisoner at St. Clair Correctional Facility who struggles with severe mental health and substance abuse issues that have manifested in violence.

5.  Monte Prince is a prisoner at St. Clair Correctional Facility who struggles with severe mental health issues that have manifested in repeated self-harm.

6.  Calvin Bryant is a prisoner at St. Clair Correctional Facility who struggles with severe mental health issues that have manifested in violence.

Drugs are one of the major contributors to violence at St. Clair Correctional Facility. Serious drugs, including methamphetamine, methadone, heroin, suboxone,

and marijuana, and drug abuse and addiction among prisoners is widespread. Many prisoners are in debt and extorted by other prisoners as a consequence of their drug addictions.

Defendants maintain lax policies with regard to confiscating drug contraband at St. Clair Correctional Facility. The Defendants' lax policies allow drugs to proliferate across the prison, including in segregation. The lack of drug treatment and widespread access to drugs at St. Clair Correctional Facility directly contribute to unsafe conditions and a number of near-fatal assaults including, but not limited to, an assault of Michael Mays, and an assault on Christopher Chapple.

Defendants' lax policies regarding the spread of drug contraband at St. Clair has contributed to the proliferation of drugs being brought into the Facility by DOC staff. Over the past two years, there have been dozens of reports of staff willfully violating DOC policy, including smuggling in contraband. This has enabled widespread corruption among officers and officers are able to extort money and favors from prisoners in exchange for drugs.

Defendants are responsible for eliminating and severely cutting back rehabilitative programming at St. Clair Correctional Facility. Defendants are also responsible for removing books and other constructive activities, including access to hobby craft a rehabilitative program designed to provide prisoners with a trade and a sense of accomplishment, from the housing units.

Defendants have restricted or eliminated programs dealing with substance abuse including Narcotics Anonymous and Alcoholics Anonymous at St. Clair Correctional Facility. Additionally, Defendants limited access to mentor programs at St. Clair Correctional Facility. Defendants have restricted or eliminated a number of rehabilitative programs at St. Clair Correctional Facility, including religious services, Convicts Against Violence, the "Stop the Violence" program, the inmate welfare council, and the Volunteers in Corrections program.

A number of individuals have observed the Defendants' cuts to mental health services, Defendants' ineffective policies concerning substance abuse, and Defendants' elimination and cutbacks on rehabilitative programming at St. Clair. These individuals include: Greg Brown, Antonio Cheatham, Mark Duke, James Edwards, Maxwell Gray, Tim Jones, Fred Kirksey, Carlton Lane, Michael Mays,

Larry McGee, Darves Thornton, Jermaine Tillman, Allan Williams, Robert Woods.

**INTERROGATORY NO. 11**

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention, that the "Therapeutic Communities program ('TC'), a substance abuse treatment program" at St. Clair does not adequately address your rehabilitation or that of the other members of the putative class, or that you have not been allowed adequate access to substance abuse therapy or counseling.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 45-47. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Therapeutic Communities program at St. Clair Correctional Facility does not adequately address the rehabilitation needs of its members and the Defendants' policies have negatively impacted the effectiveness of the Therapeutic Communities program. The management of the Therapeutic Communities program creates a dangerous environment at St. Clair Correctional Facility. There are individuals in the Therapeutic Communities program who are not classified to be housed in general population at St. Clair Correctional Facility. Individuals in the Therapeutic Communities Program are threatened with transfer to general population at St. Clair by the program's managers and facilitators. There are many prisoners at St. Clair Correctional Facility who reside in the Therapeutic Communities program dorm but are not in the program, creating an unsafe environment for the prisoners who are

18

assigned to the program.

I was a member of TC and I was sexually assaulted at knife-point on or around February 1, 2015 by another member of the TC program. I was reading on my bunk when the man who assaulted me approached me and placed a knife to my throat. The sexual assault occurred in the back corner of H-dorm, out of the view of officers. Most dorm members and the two officers on duty were busy watching the Super Bowl at the front of the dorm. I have been in segregation since reporting the sexual assault and cannot complete the TC program, even though it is very important for my upcoming parole hearing.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Defendants have restricted or eliminated programs dealing with substance abuse including Narcotics Anonymous and Alcoholics Anonymous at St. Clair Correctional Facility.

The presence of blind spots and inattentive officers in the Therapeutic Communities program directly contributed to an assault in which Antonio Cheatham was disfigured and to the rape of Anthony Zeller. The Defendants' inadequate mental health and drug counseling services directly contributed to Charles Hastings's violence and self-harm.

A number of individuals have observed the inadequate substance abuse therapy and counseling at St. Clair Correctional Facility. These individuals include: Antonio Cheatham, Mark Duke, Dale Gilley, Michael Mays, Matthew Owens, Robert Woods.

## INTERROGATORY NO. 12

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention, that your opportunities or the opportunities of any member of the putative class to engage,*

*participate, or otherwise partake in religious activities or services at St. Clair are inadequate, or that you have not been allowed adequate access to religions activities or services.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Defendants' policies have restricted prisoners' ability to practice their religion, including limiting prisoners' access to religious activities and services at St. Clair Correctional Facility. Defendants have intimidated religious program service providers who serve prisoners at St. Clair Correctional Facility.

A number of individuals have observed the Defendants' restriction on religious services at St. Clair Correctional Facility. These individuals include: James Edwards, Maxwell Gray, Ronald Veteto, Robert Woods.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

20

Plaintiff's documents:

Veteto v. Thomas et. al., No. 4:14-cv-00190-KOB-HGD (N.D. Ala. 2014).

## INTERROGATORY NO. 13

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* **IDENTIFY** *each and every document and oral communication; and* **DESCRIBE** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in the "Preliminary Statement" and related contentions in your Complaint that such Defendant has "failed to reasonably and adequately respond to [an] extremely high rate of prisoner-on-prisoner assaults and homicides and . . . dangerous conditions that facilitate . . . incidents and [a] culture of violence," that all inmates at St. Clair "are subject to a substantial risk of a violent assault," and that violent incidents "go unreported."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers Defendants to the Complaint at Paragraphs 36 and to Plaintiff's response to Interrogatories 5-6. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Defendants have failed to react to a dangerously high number of contraband knives at St. Clair Correctional Facility, contributing to a number of homicides and serious assaults. Defendants' failure to maintain the security of the locking

mechanisms of cells in both general population and segregation at St. Clair Correctional Facility has contributed to the high rate of violence.

Defendants have allowed prisoners at St. Clair Correctional Facility to move freely among the prison, including allowing movement into unauthorized areas, and this movement has contributed to the high rate of violence.

Defendants' inadequate classification policy and procedures have contributed to the high rate of violence at St. Clair Correctional Facility. Proper investigation and reporting is often not conducted on serious physical assaults at St. Clair Correctional Facility. Though I reported the sexual assault and contacted I&I multiple times, have never heard the outcomes of the I&I investigation. This sexual assault also occurred due to the Defendants' failure to react to the number of contraband knives.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

There is frequent serious violence at St. Clair Correctional Facility. There have been a number of recent homicides at St. Clair, including the murders of Tim Duncan, Jodey Waldrop, Marquette Cummings, Jammy Bell, John Rutledge, and Jabari Bascomb.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Defendants' failure to react to the high number of contraband knives contributed to the incident where Allan Williams was assaulted and nearly killed. Defendants' failure to react to the high number of contraband knives contributed to the incident where Mark Duke was assaulted and nearly killed. Defendants' failure to react to the high number of contraband knives contributed to the incident where Michael Mays was assaulted and nearly killed. Defendants' failure to react to the high number of contraband knives contributed to the incident where Michael McGregor was assaulted and almost killed.

Defendants' lax movement policies and procedures directly contributed to an assault Mark Duke experienced while in his cell by a prisoner who was not authorized to be in his living area.

Defendants' failure to maintain the security of the locking mechanisms of cells in segregation at St. Clair Correctional Facility has contributed to the high rate of violence. Defendants are not responsive to requests for maintenance crews to fix the locking mechanisms of cell doors at St. Clair Correctional Facility.

Defendants' refusal to act on prisoner's movement requests contributes to the high rate of violence at St. Clair Correctional Facility. Defendants contribute to the high rate of violence at St. Clair by responding to safety-related movement requests by directing individuals who fear for their safety to arm themselves with knives or commit acts of violence. Defendants responded to James Edwards's movement request by communicating that his safety was not in jeopardy until either he or his cell mate was put "on a stretcher," creating a dangerous environment in my living area.

Defendants have a policy and practice of draconian disciplinary measures and physical assault of prisoners who refuse to move into housing because of a risk of violence with other prisoners. This policy contributes to the high rate of violence at St. Clair. Defendants' inadequate polices and practices related to movement requests contributed to a correctional officer physically assaulting Dale Gilley in response to his movement request. Defendants' refusal to act on Derrick White's safety-related movement request contributed to his violent assault. Defendants' refusal to act on Freddie Stallworth's safety-related movement request contributed to his violent assault. Defendant's refusal to act on a safety-related movement request contributed to the stabbing of Christopher Chapple. Defendants' refusal to act on Alister Cook's safety-related movement request contributed to his violent assault.

Defendants responded to Robert Woods' movement request by directing him to arm himself with a knife as protection against the individual who was creating a dangerous environment in his living area. Defendants responded to Mark Archer's safety concerns by directing him to "get a knife." Defendants responded to Terrell French's safety concerns by indicating Mr. French should "kill" the prisoner he was in conflict or, alternatively, that he should "kill [him]self."

Defendants' policies and response to violence discourages prisoners from

23

reporting assaults at St. Clair Correctional Facility. Defendants have a policy and practice of coercing prisoners at St. Clair Correctional Facility into signing living agreements, contributing to the high rate of violence. Defendants have a policy and practice of allowing prisoners at St. Clair Correctional Facility with prior conflict to live in the same housing area.

In addition to Responding Plaintiff, a number of individuals have information relevant to the Defendants' inadequate response to the high rate of prisoner-on-prisoner assaults and homicides at St. Clair Correctional Facility. These individuals include:  Victor Russo, Anthony Zeller, Michael McGregor, Williams Casey, Jamal Woods, James Dorriety, Nakia Echols, David Beech, Jeffrey Peoples, Brandon Ladd, Larry Hill, Bradley Gant, Micah Mays, Justen Stinson, Elliot Blounty, Derrick LaKeith Brown, Dugan Clayton, James Harnage, Michael Stamper, Mark Archer, Dale Gilley, Christopher Chapple,   Mark Archer, Greg Brown, Christopher Chapple, Antonio Cheatham, Michael Craig, Michael Christianson, Tommy Demming, Mark Duke, James Edwards, Terrell French, Timothy Gayle, Dale Gilley, Keon Hardy, Benjamin Howlet, Maxwell Gray, Fred Kirksey, Michael Mays, Larry McGee, Matthew Owens, Demetric Pritchett, Derrick White, Allan Williams, Robert Woods.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiff's documents:

Stallworth v. Graham, No: 4:14-cv-00134-RDP-HGD (N.D. Ala. 2013) (affidavit of Lt. Graham); Stallworth v. Graham, No: 4:14-cv-00134-RDP-HGD (N.D. Ala. 2013) (complaint).

## INTERROGATORY NO. 14

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* **IDENTIFY** *each and every*

*document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that the ADOC's or Defendant's policies at St. Clair fail "to adequately supervise and monitor the housing units and common areas in the Facility and to maintain the safety and security of prisoners at St. Clair," and that "inadequate supervision by correctional officers has created a dangerous environment, has contributed to numerous homicides and assaults in the Facility, and creates a substantial risk of serious harm."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 26-36. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

There are a number of unsupervised or unmonitored areas at St. Clair Correctional Facility where serious assaults take place. Prisoners who are assaulted in their cells at St. Clair Correctional Facility are unable to get an officer's attention, contributing to a substantial risk of serious harm. A number of correctional officers at St. Clair Correctional Facility neglect their posts and supervision duties, contributing to a substantial risk of serious harm.

Defendants' policy and practice of not supervising or monitoring a number of areas within the prison directly contributed to the sexual assault I experienced. It occurred in the back-corner of H dorm, out of view of the two officers who were preoccupied watching the Super Bowl at the front of the dorm.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Routine security checks and security roving is not adequately conducted at St. Clair Correctional Facility. There are an insufficient number of officers stationed at St. Clair Correctional Facility to maintain constant supervision of prisoners at all times, contributing to a substantial risk of serious harm. Defendants' inadequate staffing policies and procedures directly contributes to violent assaults in plain view within housing areas of St. Clair Correctional Facility.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

The presence of blind spots and inattentive officers and the Defendants' policy and practice of not supervising or monitoring activity within assigned cells or common areas has directly contributed to a number of fatal and near-fatal assaults including:

1. The stabbing death of Jodey Waldrop in his cell.
2. The stabbing death of Marquette Cummings in an area not monitored by Defendants.
3. The strangling death of John Rutledge in his cell.
4. The stabbing death of Jabari Bascomb.
5. A near-fatal assault Mark Duke experienced while on the G-yard.
6. The near-fatal assault of Muhammad Al-Ameen, also known as Terry Rivers.
7. The near-fatal assault of Freddie Stallworth.
8. The near-fatal assault of Benjamin Howlett.
9. The near-fatal stabbing of Michael Mays outside between P/Q and J/K blocks.
10. The stabbing of Alister Cook.
11. The stabbing of Terrell French.
12. An assault Mark Duke experienced while in his cell by a prisoner who was not authorized to be in his living area.

13. An assault of Anthony Moss leading to partial blindness.
14. A sustained assault of Derrick White in multiple common areas.
15. An assault of Derrick White in the gym.
16. The assault in which Antonio Cheatham was disfigured.
17. An assault Dale Gilley experienced while returning to his living area after a legal visit.
18. An assault and hostage-taking that began in a common area and continued into the victim's assigned cell.
19. The stabbing on Michael McGregor.
20. The assault on Victor Russo inside his cell after returning from the canteen.
21. The rape of William Casey in his cell.
22. The stabbing of Nakia Echols by prisoners who entered his cell while Mr. Echols was sleeping.
23. The assault of Jeffrey Peoples in his cell.
24. The stabbing of Brandon Ladd in his cell.
25. The stabbing of Justen Stinson in his cell.
26. The stabbing of Elliot Blount in his cell.
27. The attempted rape of James Harnage.
28. The assault on Joseph Royal in his cell.

In addition to Responding Plaintiff, a number of individuals have information as to how Defendants' inadequate supervision and monitoring of the housing units and common areas at St. Clair Correctional Facility contributes to a substantial risk of serious harm. These individuals include: Mark Archer, Greg Brown, Christopher Chapple, Antonio Cheatham, Michael Craig, Michael Christianson, Tommy Demming, Mark Duke, James Edwards, Terrell French, Timothy Gayle, Dale Gilley, Keon Hardy, Benjamin Howlet, Maxwell Gray, Fred Kirksey, Michael Mays, Larry McGee, Matthew Owens, Demetric Pritchett, Derrick White, Allan Williams, Robert Woods.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiff's documents:

Al-Ameen v. Davenport, No: 4:12-cv-03000-WMA-JEO (N.D. Ala. 2012) (complaint); Moss v. Davenport, No. 4:11-cv-01397-KOB-RRA (N.D. Ala. 2011) (complaint); Stallworth v. Graham, No: 4:14-cv-00134-RDP-HGD (N.D. Ala. 2013) (complaint)

## **INTERROGATORY NO. 15**

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support the statistics cited in Paragraphs 12 and 13 of the Complaint.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers Defendants to the Complaint at Paragraphs 12 and 13. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiff's documents:

Margaret E. Noonan & Scott Ginder, Bureau of Justice Statistics, Mortality; Nathan James, Cong. Research Serv., The Federal Prison Population Buildup Overview; 2011 ADOC Annual Report; 2011 ADOC Monthly Reports All; 2012 ADOC Annual Report; 2012 ADOC Monthly Reports All; 2013 ADOC Annual Report; 2013 ADOC Monthly Reports All; 2014 ADOC Annual Report; 2014 ADOC Monthly Reports All.

## INTERROGATORY NO. 16

*DESCRIBE in detail the "incident in 2011" referenced in Paragraph 22 of the Complaint, and each and every transaction, altercation, event, or instance in which or as a result of which you contend that former Captain Sanders "has taunted prisoners and responded to their safety concerns by telling them to 'get a knife,' 'kill him or kill yourself,' and 'if you really don't like him, stab him'" as alleged in Paragraph 22 of the Complaint, or has stated "'When I see one of y'all on a stretcher, I know it's a problem'" or "'If you ain't got a knife, I'll give you one'" as alleged in subparts (c) and (d), respectively, of Paragraph 47 of the Complaint.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 24, 25, and 47, and to Plaintiff's response to Interrogatories 5-6, and 13. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the

29

parties to testify in the trial of this matter.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff answers the remainder of this interrogatory by stating the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

In 2011, Captain Sanders snatched a food tray from a prisoner's hands causing a dangerous and volatile situation to erupt leading to serious injuries to officers and prisoners.

A number of individuals observed Captain Sanders instigation of the 2011 incident. These individuals include: Greg Brown; James Edwards; Maxwell Gray.

Plaintiff's documents

Alabama Department of Corrections Incident Report, SCCF-11-02025, Dec. 7, 2011.


**INTERROGATORY NO. 17**

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* ***IDENTIFY*** *each and every document and oral communication; and* ***DESCRIBE*** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that a "group of high ranking officers have used excessive force and promulgated the culture of violence [at St. Clair] through their own actions" and specifically* ***IDENTIFY*** *the individuals that make up that alleged group.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraph 24, and to Plaintiff's response to Interrogatories 6 and 13. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

In addition to information available in the Complaint at Paragraph 25, and in Plaintiff's response to Interrogatories 7 and 15, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

1. In 2014, Captain Gary Malone punched prisoner Joseph Henderson in the head.
2. In May 2014, Lt. Carter put his hands around Jermaine Tillman's neck and applied pressure until he lost consciousness. Mr. Tillman had to be hospitalized.
3. In May 2014, Lt. Carter forced Dale Gilley to stand outside the shift office.
4. Mr. Tillman was assaulted in February 2013 by Officers Chad Cleveland, M. Desnides, and W. Howard.
5. In July 2014, Correctional Officers Donald Lukima and Christopher Smith, officers on Lt. Carter's shift, beat Venture Harrison.
6. James Bonds was beaten by officers and suffered a severe eye injury in September 2011.
7. Joseph Shack was beaten by Sgt. John Mason and suffered hearing loss as a result.
8. Richardo Eason was beaten by multiple St. Clair officers while handcuffed in February 2013.
9. Darrious Mabry was beaten by Officer Matthew Moore in October 2012.
10. Gerald Vann was assaulted by multiple officers, on or about April 17, 2015.
11. Darius Mines, who was handcuffed, was assaulted by multiple officers who beat him with batons, on or about April 17, 2015.
12. Bernard Abney was struck him in the head with a baton, thrown to the

31

ground, and struck multiple times by officers on or about April 17, 2015.

13. Maurice Green was assaulted by officers who threw him to the ground and kicked him, resulting in several of his teeth being chipped, on or about April 17, 2015.

14. Unteyus Stephens was assaulted by officers, who struck him with a television stand and struck him in the chin and ribs with batons, on or about April 17, 2015.

15. Xabrian Austin was assaulted by Officers Tolliver and Burns following a strip search in his cell, in April 2015.

16. Gerald Ingram was assaulted by officers who struck him in the rib cage with a baton, in April 2015.

17. Demetric Pritchett was assaulted by two officers while handcuffed, on or about February 3, 2015.

18. Justin Jackson was assaulted by multiple officers who punched him, slammed him to the ground, kicked him, and struck him with their batons, all while he was handcuffed, in January 2015.

19. Shakil Gamble was beaten by multiple officers and was ordered to the shift office, on or about January 3, 2015.

20. Upon information and belief, in January 2015, Zendarious White was assaulted by officers in L-Block.

21. Larry Nesbitt was assaulted by four officers in the infirmary, in December 2014.

22. Antonio Johnson was assaulted by two officers when he attempted to eat in the chow hall without his identification, on or about December 7, 2014.

23. Marcus Webb was assaulted by Captain Gary Malone while handcuffed in the infirmary, on or about December 3, 2014.

24. Tommy Demming was shoved into a wall and punched in the face while handcuffed in his segregation cell by Officer Padgett, in November 2014.

25. James Howard was assaulted by Officer Lauolefiso Jones while walking to the chow hall, on or about November 3, 2014.

26. Jamie Abrams, at the time a resident of the honor dorm, was beaten and cursed by Officer Lauolefiso Jones, who grabbed Mr. Abrams by the neck and slammed his head against a wall, in October 2014.

27. Officer Lauolefiso Jones entered Matthew Owens' cell after the Kairos program, grabbed Mr. Owens by the neck and slammed his head into his

bunk several times, in October 2014.

28. Joseph Royal was beaten while restrained by several officers in the segregation unit after the officers had been instructed by Captain Gary Malone to beat him, in October 2014.

29. Terrence Seay was assaulted by Officer Lauolefiso Jones while handcuffed and in leg shackles in the barbershop. Officer Jones punched Mr. Seay, throwing him to the ground, then stomped on him and struck him with a broom handle, on or about October 6, 2014.

30. Arlo Townsend was beaten by Officer Burns and Lt. Carter while handcuffed and subsequently sprayed with a chemical agent, in September 2014.

31. Michael Nelson, a partially-paralyzed stroke victim who relies on a wheelchair, was beaten by Officer Daniel Turner, on or about September 3, 2014.

32. Officers sprayed Charlie Bennett with chemical spray, paraded through the prison naked, and not provided with proper medical treatment to remove the chemical from his body, on or about August 4, 2014.

33. Demetric Pritchett was assaulted multiple times while restrained in segregation, in June 2014.

34. Officer Chapman punched Tommy Demming multiple times in the head, in March 2014.

A number of individuals have information relevant to the use of excessive force and culture of violence at St. Clair Correctional Facility. These individuals include: Mark Archer, Greg Brown, Antonio Cheatham, Mark Duke, Dale Gilley, Maxwell Gray, Keon Hardy, Venture Harrison, Tim Jones, Michael Mays, Larry McGee, Matthew Owens, Jermaine Tillman, Robert Woods.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiff's documents:

33

Bonds v. Lukima, No. 4:11-cv-03615-JHE (N.D. Ala. 2011) (complaint); Eason v. Davenport et al., No. 4.13-cv-00576-VEH-SHC (N.D. Ala 2013) (complaint); Mabry v. Moore, No. 4:13-cv-00199-KOB-HGD (N.D. Ala. 2013) (complaint); Shack v Mason, No. 4:12–cv–00602–RDP–TMP 2014 WL 638169 (N.D. Ala. Feb. 18, 2014); Tillman v. Desnides, No. 4-13-cv-00358-CLS-HGD (N.D. AL July 3, 2014) (Magistrate's Report and Recommendation)

## **INTERROGATORY NO. 18**

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* ***IDENTIFY*** *each and every document and oral communication; and* ***DESCRIBE*** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in subparts (a) through (ah) of Paragraph 24 of the Complaint including how each contention in those subparts supports your allegation in Paragraph 24 that the officers "exceeded the authorization of both the ADOC and St. Clair use of force policies."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a)     On or about April 17, 2015, Gerald Vann was assaulted in P-2 block. The altercation occurred in P-2 dorm. The individuals involved included

34

approximately 19 CERT officers, including Officer Milton (aka "Big Baby") and several St. Clair officers, including Officers Christian, Padgett, Hanley or Handley, and Burns and Captain Malone. Multiple other inmates were also assaulted. Mr. Vann was later taken to a free world hospital. The force used against Mr. Vann was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Gerald Vann.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(b)     Darius Mines was assaulted at approximately 9:00 am on or about April 17, 2015 in P-2 Block.   The individuals involved included approximately 19 CERT officers, including Officer Milton (aka "Big Baby") and several St. Clair officers, including Officers Christian, Padgett, Hanley or Handley, and Burns and Captain Malone. Multiple other inmates were also assaulted. Mr. Mines was treated in the infirmary several hours later, receiving approximately six staples on his head. The force used against Mr. Mines was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Darius Mines.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(c)     Bernard Abney was assaulted in P-2 block in the morning, on or about April 17, 2015. The individuals involved included approximately 19 CERT officers, including Officer Milton (aka "Big Baby") and several St. Clair officers, including Officers Christian, Padgett, Hanley or Handley, and Burns and Captain Malone. Multiple other inmates were also assaulted.   Mr. Abney was taken to UAB Hospital and received

35

stitches in his ear and treatment for a broken bone in his back. The force used against Mr. Abney was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.
Oral Communications: Counsel met with Bernard Abney.
Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(d)     Maurice Green was assaulted at around 9:30 am on or about April 17, 2015 in P-2 block. The individuals involved included approximately 19 CERT officers, including Officer Milton (aka "Big Baby") and several St. Clair officers, including Officers Christian, Padgett, Hanley or Handley, and Burns and Captain Malone. Multiple other inmates were also assaulted. Mr. Green was then taken to the infirmary for treatment. The force used against Mr. Green was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.
Oral Communications: Counsel met with Maurice Green.
Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(e)     Unteyus Stephens was assaulted at around 10:00 am on or about April 17, 2015 in P2 Block. The individuals involved included approximately 19 CERT officers, including Officer Milton (aka "Big Baby") and several St. Clair officers, including Officers Christian, Padgett, Hanley or Handley, and Burns and Captain Malone. Multiple other inmates, were also assaulted. Mr. Stephens received treatment in the infirmary. The force used against Mr. Stephens was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Unteyus Stephens.

Documents:  Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(f)    Xabrian Austin was assaulted around 9:30 pm on or around April 16, 2015.  The altercation occurred in L-2 dorm or M-2 dorm and in the shift office.   The individuals involved included Officers Tolliver and Burns, Lieutenant Carter, and Mr. Austin.  The force used against Mr. Austin was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Xabrian Austin.

Documents: Counsel is currently seeking additional documents relating to the altercation currently in the possession of ADOC through discovery.  See Plaintiffs' Second Request for the Production of Documents #4.

(g)    Gerald Ingram was assaulted on or around the second week of April 2015. The altercation occurred in N-2 dorm.  The individuals involved included several unknown CERT officers and Mr. Ingram. He was taken to the infirmary. The force used against Mr. Ingram was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Gerald Ingram.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(h)    Demetric Pritchett was assaulted on or about February 3, 2015. The other individuals involved included Officers Patton and Schmid, Sergeant Bell. The officers were the initial aggressors. The force used against Mr. Pritchett was not an instance of justifiable self-defense against physical assault, protection of others, protection of property,

37

prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command. Oral Communications: Counsel met with Demetric Pritchett.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(i)     Justin Jackson was assaulted at around 2 pm in the infirmary on or around January 20, 2015. The other individuals involved included Officer Howard, Officer Cleveland, Sergeant Cook, former Warden Davenport, several unknown officers. Officer Howard was the initial aggressor. Mr. Jackson was put in handcuffs before the assault. Former Warden Davenport was present throughout the assault in the infirmary. Mr. Jackson was then taken to a "holding cell" and, while still handcuffed, struck with batons by Sgt. Cook and Officer Howard. The force used against Mr. Jackson was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communication: Counsel met with Justin Jackson.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(j)     Shakil Gamble was assaulted at around 9:00 pm on or around January 3, 2015. The other individuals involved include Officer Tolliver, Lieutenant Carter, an unknown sergeant, several unknown officers. Officer Tolliver was the initial aggressor. The altercation occurred in the shift office. The reason for the altercation is unknown. The force used against Mr. Gamble was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Shakil Gamble.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See

Plaintiffs' Second Request for the Production of Documents #4.

(k)     Upon information and belief, Zendarious White was assaulted in January 2015. The altercation involved unknown officers and Mr. White. The officers were the initial aggressors. Several officers assaulted Mr. White, striking him and slamming him to the ground. Upon information and belief, the altercation occurred in L block. The force used against Mr. White was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.
Oral Communications: Counsel met with Michael Mays.
Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(l)     Larry Nesbitt was assaulted by officers on or around December 18, 2014. The other individuals involved include Officers Williams, Suggs, and two officers named Howard. The officers punched and slapped Mr. Nesbitt, who was handcuffed behind his back, multiple times. The altercation occurred in the infirmary. The force used against Mr. Nesbitt was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.
Oral Communications: Counsel met with Larry Nesbitt.
Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(m)     Antonio Johnson was assaulted at around 4:00 pm on or around December 7, 2014. The other individuals involved include Officer Bowman, Officer Burke, and Lieutenant Gray. Officer Burke was the initial aggressor. Mr. Johnson was taken from the chow hall to the shift office by Officer Burke, who punched him in the face several times. Officer Bowman then approached and attempted to punch Mr. Johnson;

The officers forced Mr. Johnson to the ground and punched and kicked him several times.  Lieutenant Gray and Officer Bowman pinned Mr. Johnson to the ground.  The altercation occurred in the shift office.  The force used against Mr. Johnson was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Antonio Johnson.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(n) Marcus Webb was assaulted on or about December 3, 2014.  The individuals involved included Captain Malone and Officer Griffin. Officer Griffin and Captain Malone were the initial aggressors. Mr. Webb was handcuffed when Officer Griffin pushed him and kicked his legs out from under him, causing Mr. Webb to fall and hit his face on the floor.  Officer Griffin then kicked him in the head.  Several of Mr. Webb's upper teeth went through his lip. Mr. Webb was then taken to a free world hospital. The force used against Mr. Webb was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Marcus Webb.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(o) Tommy Demming was assaulted  on or about November 9, 2014. The other individual involved was Officer Padgett, who was the initial aggressor.  In his segregation cell after returning from the shower, Officer Padgett shoved Mr. Demming and his head hit the wall. Mr. Demming was handcuffed at the time. Officer Padgett then rolled Mr. Demming onto his back, and punched him in the face. The force used

against Mr. Demming was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command. Oral Communications: Counsel met with Tommy Demming.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(p) On or about November 3, 2014, James Howard was assaulted. The other individual involved was Officer Lauolefiso Jones, who was the initial aggressor and who assaulted Mr. Howard while Mr. Howard was walking to the chow hall. Officer Jones grabbed Mr. Howard, picked him up and slammed him into the ground. Officer Jones then kicked him while he was handcuffed. The force used against Mr. Howard was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with James Howard.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(q) Jamie Abrams was assaulted on or about October 26, 2014. The other individual involved was Officer Lauolefiso Jones, who was the initial aggressor. Mr. Abrams, at the time a resident of the honor dorm, was beaten by Officer Jones, who grabbed Mr. Abrams by the neck and slammed his head against a wall. Officer Jones left the cell as Mr. Abrams was nearing the point of passing out. The force used against Mr. Abrams was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communication: Counsel met with Jamie Abrams.

Documents: Counsel is currently seeking documents relating to the

41

altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(r) Matthew Owens was assaulted on or about October 26, 2014. The other individual involved was Officer Lauolefiso Jones, who was the initial aggressor. Officer Jones entered Mr. Owens' cell in M dorm grabbed Mr. Owens by the neck and slammed his head into his bunk several times. Mr. Owens nearly passed out while being choked. The force used against Mr. Owens was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.
Oral Communications: Counsel met with Matthew Owens.
Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(s) Joseph Royal was assaulted by officers on or about October 20, 2014. Mr. Royal was beaten while restrained by several officers in E block in the segregation unit. The names of the officers are unknown. Captain Malone instructed the officers to beat Mr. Royal after he came out of his handcuffs. The officers were the initial aggressors. One officer kicked Mr. Royal's legs out and knocked him to the ground. Another officer put his knee on Mr. Royal's neck while beating him. The reason for the assault is unknown. The force used against Mr. Royal was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.
Oral Communication: Counsel met with Joseph Royal.
Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(t) Terrance Seay was assaulted on or about October 6, 2014. Officer

Lauolefiso Jones was the other individual involved and was the initial aggressor. Mr. Seay was assaulted by Officer Jones while handcuffed and in leg shackles in the barbershop. Officer Jones punched Mr. Seay, threw him to the ground and continued to assault him. Mr. Seay was handcuffed throughout the assault. The force used against Mr. Seay was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communication: Counsel met with Terrance Seay.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(u) Arlo Townsend was assaulted on or about September 29, 2014. The other individuals involved were Officer Burns and Lt. Carter, who were the initial aggressors in each incident. Mr. Townsend was beaten by Officer Burns while handcuffed and subsequently sprayed with a chemical agent while he was walking to the shift office. Lieutenant Ronald Carter then accompanied Mr. Townsend to the infirmary, where Lieutenant Carter inflicted a second beating on the handcuffed Mr. Townsend. The force used against Mr. Townsend was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Arlo Townsend.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(v) Michael Nelson was assaulted on or about September 3, 2014. The other individual involved was Officer Daniel Turner, who was the initial aggressor. Michael Nelson uses a wheelchair. He was beaten by Officer Daniel Turner. Officer Turner repeatedly punched him in the face and chest. Officer Turner pushed Mr. Nelson in his wheelchair into a

bathroom area, where he threw Mr. Nelson and the wheelchair into a wall, forcing Mr. Nelson onto the floor and destroying his wheelchair. The force used against Mr. Nelson was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communications: Counsel met with Michael Nelson.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(w) Charlie Bennett was assaulted on or about August 4, 2014. Charlie Bennett was sprayed with chemical spray, paraded through the prison naked, and not provided with proper medical treatment to remove the chemical from his body. The other individuals involved were Officer Chad Cleveland and Sergeant Truitt and they were the initial aggressors. Officer Chad Cleveland ordered Mr. Bennett to squat and cough three separate times, even though no contraband was found during the first two searches. The force used against Mr. Bennett was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communication: Counsel met with Charlie Bennett.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(x) Demetric Pritchett was assaulted in June 2014. The other individuals involved were Officer Spells, Officer Dixon, Officer Scales, Officer Lemon, Captain Malone and several other officers. The officers were the initial aggressors. Mr. Pritchett was assaulted multiple times while restrained in segregation. On June 9, Officer Spells pushed Mr. Pritchett to the ground in the A-block walkway while he was handcuffed. On June 10, 2014, Officer Dixon and Officer Scales pushed Mr. Pritchett to

44

the ground while he was handcuffed in the disciplinary hearing room in segregation. On June 11, 2014, in Mr. Pritchett's cell in B block, Officer Lemon beat Mr. Pritchett in the head and face while Mr. Pritchett was handcuffed and shackled. Officer Lemon's assault occurred after orders from Captain Malone. The force used against Mr. Pritchett was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communication: Counsel met with Demetric Pritchett.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(y) Tommy Demming was assaulted on or about March 25, 2014. The other individuals involved were Officer Bryan Chapman, Officer Guthrie, and prisoner Cliffton Atkins. The officers were the initial aggressors. The assault occurred in the nurse's clinic in segregation. Officer Chapman opened the door to Mr. Demming's cage and punched him three times in the head. Mr. Demming was handcuffed while he was assaulted. The force used against Mr. Demming was not an instance of justifiable self-defense against physical assault, protection of others, protection of property, prevention of escape or apprehension of escapees, "quelling" a disturbance, or in response to physical resistance of a lawful command.

Oral Communication: Counsel met with Tommy Demming.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(z) In 2014, Captain Carl Malone punched Joseph Henderson, who was handcuffed, in the head, chipping Mr. Henderson's tooth.

Oral Communications: Counsel met with Joseph Henderson

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

45

(aa) On or about July 24, 2014, Correctional Officers Donald Lukima and Christopher Smith, officers on Lt. Carter's shift beat Venture Harrison. Officers Lukima and Smith ordered Mr. Harrison out of his cell in P1-Block in the middle of the night, took him into the hallway outside the block, handcuffed him, and then hit him in the back of the head with handcuffs wrapped around their knuckles, causing injuries requiring staples. Upon information and belief, Lt. Carter observed the assault but did not intervene.

Oral Communications: Counsel met with Venture Harrison.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(ab) On or about May 20, 2014, Lt. Carter put his hands around Jermaine Tillman's neck and applied pressure until he lost consciousness. Mr. Tillman had to be taken to UAB hospital due to his injuries.

Oral Communications: Counsel met with Jermaine Tillman.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(ac) On or about May 8-9, 2014, Lt. Carter forced Dale Gilley to stand outside the shift office facing the wall for fourteen hours and, at one point during that period of time, slammed his head against the wall and punched him in the face.

Oral Communications: Counsel met with Dale Gilley.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #4.

(ad) Jermaine Tillman was assaulted in February 2013, by Officers Chad Cleveland, M. Desnides, and W. Howard. The officers assaulted Mr. Tillman when he was returning to his cell from the showers and was restrained in handcuffs behind his back. The officers hit Mr. Tillman in the face, slammed his head into a window, and continued to punch,

kick, and beat him when he fell to the floor.  Mr. Tillman's injuries included swelling to his head and bruising on his face.
Oral Communications: Counsel met with Mr. Tillman.
Documents: See Plaintiffs' First production of Documents SCP000316-341.

(ae) Upon information and belief, inmate Richardo Eason was beaten by multiple St. Clair officers while handcuffed in February 2013.   While assigned to the segregation unit, Mr. Eason was placed in handcuffs before being allowed to leave his cell for a shower. Officer JaMichael Howard left his post and approached Mr. Eason, asked him a question, then punched Mr. Eason several times in the face. Officers Taylor Knight and Chad Cleveland then assisted Howard in slamming Mr. Eason onto the floor.
Documents: See Plaintiffs' First production of Documents SCP00142-147.

(af) Upon information and belief, inmate Darrious Mabry was beaten by Officer Matthew Moore in October 2012.  In a dispute over Mr. Mabry leaving the dining hall with extra cake, Officer Moore left his post and attacked Mr. Mabry, who suffered a broken nose, split lip, broken tooth, injured eye, and head contusions.
Documents: See Plaintiffs' First production of Documents SCP00245-252.

(ag) Upon information and belief, on January 20, 2012, inmate Joseph Shack was beaten by Sgt. John Mason and suffered hearing loss as a result. Mr. Shack was handcuffed and shackled during the beating. Sgt. Mason punched him in the head, face, and ear, stomped on his back, kicked him and yelled racial epithets at him.  Mr. Shack had requested the presence of a witness at a disciplinary hearing, and Sgt. Mason responded: "This is what I do to a [n . . .] that tries to tell me how to do my job." Mr. Shack was treated for a ruptured ear, fractured thumb, internal bleeding, and possibly fractured ribs.  He was fitted for a hearing aid following the rupture.
Documents: See Plaintiffs' First production of Documents SCP00476-

491.

(ah) Upon information and belief, James Bonds was beaten by officers and suffered a severe eye injury in September 2011. Three correctional officers shook down his cell, forced him to remove clothes and to squat and cough. After they found a cell phone in his cell, the officers sprayed Mr. Bonds with a chemical agent and struck him with batons, then handcuffed him. After Mr. Bonds was handcuffed, Officer Donald Lukima arrived at the scene and struck Mr. Bonds in the eye while Mr. Bonds was handcuffed. Mr. Bonds suffered a serious eye injury, including an orbital wall fracture to his left eye and massive bleeding. His injuries required multiple treatments and surgeries at outside hospitals.

Oral Communications: Counsel met with James Bonds.

Documents: See Plaintiffs' First production of Documents SCP00020-40

## INTERROGATORY NO. 19

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in subparts (a) and (b) of Paragraph 25 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this

response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a)  For three days in October 2014, Antonio Cheatham was forced to stand outside the shift office for two nights because the prison staff refused to place him in safe housing.  The situation began on or around October 3, when Captain Carl Sanders ordered Mr. Cheatham to move to L-Block.  Mr. Cheatham, who had recently had part of his ear bitten off by another inmate, told Captain Sanders that he had documented enemies in L-Block and could not live there.   Captain Sanders responded by telling Mr. Cheatham he could either move to L-Block or stand outside the shift office all night. Mr. Cheatham spent two nights outside the shift office as a result.
Oral Communiations: Counsel met with Antonio Cheatham.
Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #5.

(b) The incident is described in the complaint: In early October 2014, Robert Woods, who is 57 years old and disabled, complained to Captain Carl Sanders that another inmate was hiding contraband under his bed, and requested a move to a safe block.  Captain Sanders responded by threatening to assign Mr. Woods, who is missing one leg, to a top bunk. Captain Sanders then assigned Mr. Woods to Q-Block,  a notoriously violent housing unit.  When he arrived, Mr. Woods was instructed by the inmates who controlled the block where he could live within the block.
Oral Communication: Counsel met with Robert Woods.
Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #5.

49

## INTERROGATORY NO. 20

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* **IDENTIFY** *each and every document and oral communication; and* **DESCRIBE** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in subparts (a) through (ao) of Paragraph 36 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. The identity of assailants, to the extent that it is known, is protected by the Fifth Amendment right against self-incrimination.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

> (a) Victor Russo was assaulted on or about May 29, 2015.  Mr. Russo was robbed and assaulted shortly after returning from the prison store to his cell in L-2 Block.  The other prisoners were able to open his cell door and enter his cell because the door had a broken locking mechanism.  They attacked Mr. Russo, who is 52, and stole all of his store items. The men were armed with knives. He suffered injuries requiring treatment at UAB Hospital.
> Oral Communication: Counsel met with Victor Russo.
> Documents: Counsel is currently seeking documents relating to the

incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(b) Anthony Zeller was sexually assaulted by another inmate on or about April 24, 2015.The rape occurred in H dorm, the Therapeutic Community, a week after Mr. Zeller was transferred to St. Clair. Mr. Zeller was asleep in his bunk when his assailant put a knife to his throat and raped him. After reporting the rape, Mr. Zeller was placed in an isolation cell in segregation and was unable to participate in the Therapeutic Community. He was not provided with continuing medical or mental health treatment. When placed in an isolation cell in segregation, Mr. Zeller reported to officers that he felt suicidal and in response he was told to kill himself. He never heard the outcome of the I&I investigation. Mr. Zeller's assailant was a general population prisoner living in H dorm who was not a participant in Therapeutic Community and, upon information and belief, has a history of violence and sexual assault.
Oral Communication: Counsel met with Anthony Zeller.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(c) Michael McGregor was assaulted by another prisoner on or about April 15, 2015. Mr. McGregor was repeatedly stabbed two days after arriving at St. Clair. Mr. McGregor was asleep in his cell in L-2 Block, with the door locked. His assailant was able to enter his locked cell and stabbed him in his arms, chest, back, head, and neck, using two ice picks. Mr. McGregor suffered extensive injuries to his back and neck, including chipped vertebrae, requiring treatment at UAB hospital. Hours before this assault, Mr. McGregor reported to his classification officer that he needed to be moved because he was being threatened by this assailant. His request was denied.
Oral Communication: Counsel met with Michael McGregor.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(d) William Casey was sexually assaulted by another prisoner on or about April 10, 2015. Mr. Casey was raped twice at knifepoint in the middle of the night by his cell partner in P-Block. Mr. Casey had been required to sign a living agreement as the only means of avoiding placement in isolation. Mr. Casey continued to face retaliation from friends of his assailant. Mr. Casey did not receive continuing mental health care and never heard the outcome of the I&I investigation.
Oral Communication: Counsel met with William Casey.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(e) Jamal Woods was assaulted by another prisoner on or about March 30, 2015. Woods was stabbed by three inmates in L-Block. Mr. Woods was stabbed in his head, face, shoulder, and leg, receiving serious injuries that required two trips to UAB hospital. The assault was in plain sight of the cube officer. Upon returning to St. Clair it was discovered that he was bleeding internally and he had to return to UAB.
Oral Communication: Counsel met with Jamal Woods.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(f) James Dorriety was assaulted by another inmate on or about March 29, 2015. Mr. Dorriety was returning to his cell block, N/O, from the prison canteen when three men armed with knives robbed him of his canteen goods and assaulted him. The assault occurred on the G-yard. Mr. Dorriety was stabbed multiple times in his head and back, suffering a punctured lung. He required treatment at UAB hospital.
Oral Communications: Counsel met with James Dorriety.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(g) Nakia Echols was assaulted on or about March 12, 2015. Mr. Echols suffered multiple stab wounds from another inmate. The inmate entered

his cell in P-Block armed with a knife and icepick in the early morning hours as Mr. Echols slept and assaulted him. Following the assault, Mr. Echols was too frightened to return to his cell and slept for a week on a bench in Q-Block.

Oral Communications: Counsel met with Nakia Echols.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(h) David Beech was assaulted by another prisoner on or about March 2, 2015. Mr. Beech, who is 58 years old, was stabbed and seriously injured by another prisoner, while both were waiting in the noon pill call line. The other man cut Mr. Beech's throat with a box cutter and stabbed him in the wrist, head, and back. Mr. Beech was treated at UAB hospital. Upon information and belief, the assailant suffers from mental illness and was trying to get to segregation due to problems in his dorm.

Oral Communications: Counsel met with David Beech.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(i) Jeffrey Peoples was assaulted by other prisoners on or about March 1, 2015. Mr. Peoples was assaulted in his cell in Q dorm while he was sleeping by multiple assailants.

Oral Communications: Counsel met with Jeffrey Peoples.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(j) Brandon Ladd was assaulted by another prisoner in February 2015. Mr. Ladd was stabbed during an attempted robbery in his cell in L-Block by another prisoner who was assigned to Q-Block. Mr. Ladd went to the cube officer who did not help. Mr. Ladd lost consciousness. Mr. Ladd suffered stab wounds to his forearm and chest, resulting in a collapsed lung, which required extensive treatment, including surgery, at UAB hospital.

Oral Communications: Counsel met with Brandon Ladd.
Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(k) Larry Hill was assaulted by other prisoners on or about February 22, 2015. Mr. Hill was assaulted in his cell block in Q dorm by multiple inmates who were allowed entry into the cell block by the cube officer. Mr. Hill was beaten and knocked unconscious.
Oral Communications: Counsel met with Larry Hill.
Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(l) John Miller was sexually assaulted on or around February 1, 2015. Mr. Miller was raped by another inmate. The assailant approached Mr. Miller as he was reading on his bunk and placed a knife to his throat. The assailant the same man who attempted to sexually assault James Harnage. Both men were assigned to the Therapeutic Community in H dorm, which is where the rape occurred. Mr. Miller did not have sight and sound separation from his assailant even while in segregation. Mr. Miller complained about this to Lt. Northcutt, Captain Malone, and Warden Evans, but they did not respond. He has not received mental health counseling and has not heard the outcome of the I&I investigation.
Oral Communications: Counsel met with John Miller.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(m) Bradley Gant was assaulted by another prisoner on or about January 24, 2015. Mr. Gant was attacked outside the L/M building. He suffered head and facial injuries after being struck with a metal lock by an inmate who had previously harassed him. Mr. Gant required staples in the back of his head and stitches on his chin as a result of the assault. When Mr. Gant reported the earlier harassment, Captain Sanders advised Mr. Gant

to "get a knife and do something about it."
Oral Communications: Counsel met with Bradley Gant.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.


(n) Micah Mays was assaulted by other prisoners on or about January 19, 2015. Micah Mays was stabbed and cut multiple times, suffering injuries to his face, wrists, neck, and shoulders during a robbery attempt in N-Block. He was assaulted by five assailants. His assailants entered N-Block from a different block. His assailants dragged him out of his cell and he was kicked and stabbed multiple times. His injuries were severe and he required treatment at UAB hospital.
Oral Communications: Counsel met with Micah Mays.
Documents: News article, Jon Reed, St. Clair Correctional Facility Still on Lockdown After Fight Involving Several Inmates, Birmingham News, January 20,2015, http://www.al.com/news/ birmingham/index.ssf/2015/01/st_clair_correctional_facility.html. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.


(o) Mr. Stinson was stabbed and punched in his cell in P-Block on or about January 15, 2015. Mr. Stinson's clothes were bloody and his face was swollen and bloody. He was taken to UAB for treatment.
Oral Communications: Counsel met with Justen Stinson.
Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.


(p) Elliot Blount was assaulted by another prisoner on or about January 11, 2015. Mr. Blount was robbed and stabbed in his cell in N1-Block. Mr. Blount's assailant was assigned to P/Q and was allowed to enter an unassigned living area. The assailant stabbed Mr. Blount several times in the chest and head. Mr. Blount suffered severe head injuries, an X-Ray at UAB revealed blood in his skull. Mr. Blount received

extensive surgery at UAB hospital.
Oral Communications: Counsel met with Elliot Blount.
Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(q) Derrick LaKeith Brown was assaulted by another prisoner on or about January 25, 2015. Mr. Brown, an inmate who suffers from hemophilia, was stabbed and seriously injured by another inmate, while Mr. Brown was walking near the G Dorm, where Mr. Brown resides. His wounds included a punctured liver and internal bleeding that required treatment at UAB hospital.
Oral Communications: Counsel met with Derrick LaKeith Brown.
Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(r) Dugan Clayton was sexually assaulted by another prisoner in January 2015. Mr Mr. Clayton, a nonviolent offender, was raped at knifepoint in L2-Block. His assailant told him that he would kill him if he reported the rape. Upon information and belief, the assailant has a history of sexually and physically assaulting other prisoners. Mr. Clayton reported the rape in April 2015 after continual harassment by Mr. Welch's friends. Mr. Clayton did not receive continuing mental health counseling. He was placed in an isolation cell in segregation after reporting the rape, but still did not have sight and sound separation from his assailant. Mr. Clayton has not heard the outcome of the I&I investigation.
Oral Communications: Counsel met with Dugan Clayton.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(s) James Harnage was the victim of an attempted sexual assault by another prisoner that occurred on or about December 18, 2014. Mr. Harnage was confronted in his cell in M-1 by the same man who later

raped John Miller. The assailant wielded a large knife and told Mr. Harnage to take off his clothes and indicated he was going to sexually assault him. Mr. Harnage reported the attempted sexual assault and was placed in segregation. Mr. Harnage never heard the results of the I&I investigation. Two months later, the same assailant sexually assaulted John Miller. The assailant was then moved to segregation and placed in the same block as Mr. Harnage.

Oral Communications: Counsel met with James Harnage.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(t) Michael Stamper was assaulted by another prisoner on or about December 3, 2014. Mr. Stamper, who is 53 years old, was stabbed in his forehead and in his lung. The incident occurred in the day room of O-Block, which is typically reserved for older inmates with good disciplinary records. Mr. Stamper received over 40 stitches and required treatment at UAB hospital. His assailant was a younger prisoner.

Oral Communications: Counsel met with Michael Stamper.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(u) Frankie Johnson was assaulted on or about November 15, 2014. Mr. Johnson was stabbed in the back of his head, the backs of both arms, his left side, and on one of his fingers while in the chow hall and in full view of several correctional officer. Mr. Johnson required staples to the back of his head and stitches to his finger.

Oral Communications: Counsel met with Frankie Johnson.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(v) Mark Archer was the victim of a robbery on or about November 24, 2014. Mark Archer, an older inmate who has undergone surgery for severe back problems, had all of his personal property stolen from his

57

cell in M2 while he was in the shift office. The stolen items included a special, egg-crate mattress Mr. Archer needs for his back. Neither Mr. Archer nor St. Clair staff have been able to locate the mattress, and it remained missing months later.

Oral Communications: Counsel met with Mark Archer.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(w) Dale Gilley was assaulted by another prisoner on or about October 15, 2014. Mr. Gilley was assaulted in the dimly-lit tunnel leading to H dorm following his visit with Counsel. As Mr. Gilley entered the tunnel he heard another prisoner say, "Hey, holler at me about that program," and the man then punched him in the face. Mr. Gilley reported the incident and, because he was unable to identify his assailant, was given the choice of signing a liability release form or going to an isolation cell in segregation.

Oral Communications: Counsel met with Dale Gilley.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(x) Christopher Chapple was assaulted by other prisoners in September or October 2014. Mr. Chapple was beaten over the course of several hours by approximately twelve assailants in Q-Block. There was only a single cube officer in the block, a cadet, who never came out of the cube during Mr. Chapple's assault, nor called for other officers to assist as the beating continued.

Oral Communications: Counsel met with Christopher Chapple.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(y) Joseph Royal was assaulted by another prisoners on or about September 24, 2014. Mr. Royal was attacked by his cell mate soon after being transferred to P-Block. He was taken to Brookwood Hospital,

58

where he received staples in his head.

Oral Communications: Counsel met with Joseph Royal.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(z)  In August 2014, Victor Russo, who is 52 years old, was transferred out of J dorm and into M dorm. Soon afterward, he was accosted by three younger inmates armed with knives, who robbed him. When Mr. Russo reported the robbery to correctional staff, Captain Sanders suggested he get a knife to protect himself.

Oral Communication: Counsel met with Victor Russo.

Documents: Counsel is currently seeking documents relating to the altercation currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(aa) Tim Duncan was killed by another prisoner or prisoners in N-Block. Mr. Duncan had previously had conflict with individuals in N-Block, including his cellmate, and had made numerous requests to Captain Sanders to be transferred to a new housing assignment. These requests were repeatedly denied. His cellmate, and others on the block, caused Mr. Duncan's death by pushing him down the stairs.

Oral Communications: Counsel met with Timothy Billie. Counsel met with James Edwards.  Counsel met with Michael Mays. Counsel met with Mark Archer.  Counsel met with Frankie Johnson. Counsel met with Robert Woods.  Counsel met with Mark Duke.

Documents: Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.  See Plaintiffs' Second Request for the Production of Documents # 2 and 7.

(ab) On or about June 3, 2014, Jodey Waldrop was murdered in his cell by another prisoner in the middle of the night.

Oral Communications: Counsel met with Antonio Cheatham, Mark Duke, Fred Kirksey, Greg Brown, Keon Hardy, and Christopher Chapple.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #7.

(ac) On or about June 11, 2014, Derrick White was Mr. White was choked and dragged unconscious into the showers in Q block, where he was stabbed and burned by multiple inmates, and remained for hours, without being discovered by staff. Prior to this incident, Mr. White had been asked to move to segregation because he believed his safety was in danger. That request was denied.
Oral Communications: Counsel met with Derrick White.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #7.

(ad) On or about May 23, 2014, Derrick White was stabbed in the gym by another prisoner. Mr. White's assailant also stabbed another prisoner during this incident. There were approximately 20 prisoners present in the gym and 200 prisoners in the yard at the time of the stabbing. Upon information and belief, there was one officer supervising the yard and no officers present in the gym.
Oral Communications: Counsel met with Derrick White.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(ae) On or about May 11, 2014, Antonio Cheatham was assaulted by another prisoner in the bathroom of the H dorm, a known blind spot, while no correctional officers were in view. The assault happened while the prison was on lockdown. Part of his ear was bitten off and flushed down a toilet before any officers responded to the struggle
Oral Communications: Counsel met with Antonio Cheatham.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(af) On or about February 25, 2014, Alister Cook was stabbed inside his cell in P-2 Block, a blind spot to the cube officer.
Oral Communications: Counsel met with Alister Cook.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(ag) On or about January 6, 2014, Timothy Gayle stabbed and killed Marquette Cummings in the TV room in M-block, a blind spot to the cube officer. Approximately twenty to thirty minutes passed before guards stepped in.
Oral Communications: Counsel met with David Crenshaw and Keon Hardy.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #2 and 7.

(ah) In January 2014, Michael Mays  was stabbed by another prisoner on the way to the chow hall.  Mr. Mays was stabbed in the neck, in the back, and in the elbow.  Mr. Mays had to be taken to an outside hospital for treatment.
Oral Communications: Counsel met with Michael Mays.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(ai) In September 2013, Frankie Johnson was burned in his cell in P1-Block the middle of the night by a prisoner who was able to exit his own cell and enter Mr. Johnson's cell.   That prisoner threw a chemical substance that had been heated in a microwave on Mr. Johnson while he was sleeping, resulting in severe chemical burns.
Oral Communications: Counsel met with Frankie Johnson.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(aj) On or around July 20, 2013, Mark Duke was stabbed several times by another prisoner in the G-Yard and suffered a punctured lung.
Oral Communications: Counsel met with Mark Duke.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(ak) In 2013, Terrell French was stabbed multiple times with an ice pick outside the gym by another prisoner.  At the time there were approximately 200 inmates in the area, but no officers were present to intervene in the conflict. Mr. French made it to the infirmary unassisted and was eventually transported by ambulance to an outside hospital because of the seriousness of his wounds.
Oral Communications: Counsel met with Terrell French.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(al) In May, 2012, John Rutledge was strangled to death by other prisoners who entered his cell in the middle of the night when cells should have been on lockdown.
Oral Communications: Counsel met with Fred Kirksey, Greg Brown, and James Heath
Documents: DOC Incident reports, filed in Baker v. DOC, Montgomery County Circuit Court. (SCCF-12-00721).  Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery.  See Plaintiffs' Second Request for the Production of Documents #2 and 7.

(am) Upon information and belief, Muhammad Al-Ameen, also known as Terry Rivers, was repeatedly stabbed on the yard by another inmate in May 2012.  There were numerous inmates on the yard, but no officers were present when Mr. Al-Ameen was stabbed.   Mr. Al-Ameen's injuries required surgery
Documents: See Plaintiff's First Production of Documents SCCP00001-06.

(an) On or about October 15, 2011, Jabari Bascomb was stabbed to death in his cell, a blind spot to the cube officer, after another prisoner broke into his cell.

Oral Communications: Counsel met with Antonio Cheatham.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #2 and 7.

(ao) Upon information and belief, in January 2011, Anthony Moss was assaulted in his cell, a blind spot to the cube officer, and suffered an injury which caused him to lose the use of his left eye

Documents: See Plaintiffs' First Production of Documents SCP00264-274.

## INTERROGATORY NO. 21

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in subparts (a) through (d) of Paragraph 38 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a) In August 2014, Willie Brantley was stabbed by the same prisoner that fatally stabbed Jammy Bell in 2013, after Mr. Brantley was assigned to clean the halls in the segregation unit. The officers failed to secure the food-tray slots on the cell doors prior to sending the prisoner into the unit and the other man was able to stab the prisoner in his leg by sticking a knife attached to a broom handle through his open tray slot. Mr. Brantley was unable to get the attention of the officer in the cube and lost consciousness. He was treated for his injuries at UAB.
Oral Communications: Counsel met with Willie Brantley.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #8 and 9.

(b) In August 2013, Jammy Bell was fatally stabbed by another prisoner in the segregation unit after an officer failed to follow proper protocol for opening the cell doors.
Oral Communications: Counsel visited with Mark Duke; with Antonio Cheatham; and with Greg Brown.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #2, 8, and 9.

(c) Upon information and belief, Jovar Gamble was stabbed multiple times in August 2012, while housed in the segregation unit. Mr. Gamble was in handcuffs on the walk when another segregation inmate stabbed him.
Documents: See Plaintiffs' First Production of Documents SCP01650-1653.

(d) Upon information and belief, Orlando Porch was assaulted by

64

another inmate while both men were housed in segregation in January 2012.

Documents: <u>See</u> Plaintiffs' First Production of Documents SCP00275-283.

## INTERROGATORY NO. 22

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in subparts (a) through (d) of Paragraph 43 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a) <u>See</u> Interorg. Answer 20(ab).

(b) <u>See</u> Interrog. Answer 21(b).

(c) <u>See</u> Interrog. Answer 20(al).

(d) Upon information and belief, in May 2011, Derrick Averhart was stabbed in the arm, head, and face by another inmate while handcuffed in his cell in segregation.

Documents: See Plaintiffs' First Production of Documents SCCP00007-15.

## INTERROGATORY NO. 23

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in subparts (a) through (d) of Paragraph 47 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a) See Interrog. Answer 20(aa).

(b) See Interrog. Answer 20(z).

66

(c) James Edwards, who is 54 years old, has recently been assigned to cells with much younger prisoners who engage in risky activities that put him at risk and who steal his property. In 2012, while living in a prior block, Mr. Edwards' cell mate would leave the cell door unlocked at night in order to obtain drugs and engage in other prohibited behavior. Mr. Edwards complained to Captain Sanders and requested a bed transfer because his cell mate was using drugs and taking his property. Captain Sanders refused to move him and told him, "When I see one of y'all on a stretcher, I know it's a problem."

Oral Communications: Counsel met with James Edwards.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #12.

(d) Robert Woods was recently reassigned by Defendant Sanders from a block where many older prisoners live, to a violent block where he is vulnerable because he is 57 years old and physically disabled. When he expressed fear for his safety to Defendant Sanders, Sanders responded "If you ain't got a knife, I'll give you one." When Mr. Woods' property box was broken into in his cell and he reported the theft to Defendant Sanders, Sanders responded that he had moved Mr. Woods so that something like that would happen to him. When Mr. Woods spoke to former Warden Davenport about Defendant Sanders' response to his fears, former Warden Davenport responded by asking Mr. Woods if he had a knife yet. When Mr. Woods responded that he did not, former Warden Davenport told Mr. Woods to do what he needed to do to survive on his new block. Mr. Woods made one final request to Defendant Sanders to move him from his new block and Defendant Sanders responded by placing several box cutters on a table and told Mr. Woods to make a knife to protect himself.

Oral Communications: Counsel met with Robert Woods.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

**INTERROGATORY NO. 24**

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* **IDENTIFY** *each and every document and oral communication; and* **DESCRIBE** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in subparts (a) through (l) of Paragraph 53 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a) See Interrog. Answer 20(a).

(b) See Interrog. Answer 20(b).

(c) See Interrog. Answer 20(d).

(d) Raymond Roberts was forced to sleep outside the shift office on or about October 17-October 19, 2014. Raymond Roberts, 58 years old, he feared the assigned bed placement in P-Block of general population and Captain Sanders refused to place him in an isolation cell in segregation. Mr. Roberts carried his property to the shift office and slept on a mat outside of the office for three days and two nights.

Oral Communications: Counsel met with Raymond Roberts.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery.  See Plaintiffs' Second Request for the Production of Documents # 12.

(e) See Interrog. Answer 20(v).

(f) See Interrog. Answer 20(ac)

(g) In June 2014, Tim Jones, a physically disabled prisoner, was robbed at knife point by another prisoner, who, upon information and belief, is a 23 year-old mentally ill prisoner.  Mr. Jones was robbed less than 24 hours after being transferred from the Honor Dorm to L Block, a much more violent block, housing younger inmates.

Oral Communications: Counsel met with Tim Jones.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery.  See Plaintiffs' Second Request for the Production of Documents # 12.

(h) See Interrog. Answer 20(af).

(i) On or about September 24, 2013, Allan Williams was stabbed by a prisoner, who, upon information and belief, is a mentally ill prisoner. Mr. Williams was stabbed while he was walking back from his shower. Upon information and belief, the man who stabbed Mr. Williams had a violent history and had stabbed another prisoner a few years before he stabbed Mr. Williams.

Oral Communications: Counsel met with Alan Williams.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery.  See Plaintiffs' Second Request for the Production of Documents # 12.

(j) Upon information and belief, Freddie James Stallworth was stabbed multiple times by another prisoner who was his cell mate.  The stabbing caused serious injuries including a punctured lung, and required surgery at a free world hospital.  Prior to the attack, Mr. Stallworth notified Lt.

69

Carla Graham in November 2013, that he was in danger from his cell mate, and requested a move. His request was denied without adequate investigation. He was stabbed soon thereafter

Documents: See Plaintiffs' First Production of Documents SCP00297-315

(k) In November 2013, an older prisoner named Carlos Subel was assigned to L-Block and he requested to be moved to an isolation cell in segregation instead because he was worried about his safety. His request to move to segregation was denied and he continued to refuse to sleep in L-Block. He was then forced to sleep outside the shift office without a mattress for about a week where he was denied his property and access to showers. He was also forced to stand for numerous hours at a time by Lt. Carter and by Lt. Scott. Mr. Subel has several medical conditions and standing for several hours caused him several complications, including bleeding from his rectum.

Oral Communications: Counsel met with Carlos Subel.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents # 12.

(l) In 2011, Christopher Chapple was stabbed by another prisoner, who had requested to go to an isolation cell in segregation for his own protection but his requests were denied. Upon information and belief, the assailant feared for his safety due to outstanding debts he owed other prisoners for drugs and attacked Mr. Chapple in order to get moved into an isolation cell in segregation where he felt he would be safer.

Oral Communications: Counsel met with Christopher Chapple.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents # 12.

## INTERROGATORY NO. 25

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral*

70

*communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that "officers fail to enforce housing assignment locations" during counts; your contentions that prisoners found in an unauthorized area are not disciplined appropriately; and your contentions in subparts (a) through (i) of Paragraph 58 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a) <u>See</u> Interrog. Answer 20(j).

(b) <u>See</u> Interrog. Answer 20(k).

(c) <u>See</u> Interrog. Answer 20(n).

(d) <u>See</u> Interrog. Answer 20(p).

(e) <u>See</u> Interrog. Answer 20(o)

**INTERROGATORY NO. 26**

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that Defendants have "failed to promulgate and enforce adequate and effective policies, procedures and practices in the segregation housing units."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint, para.38 and Plaintiff's Response to Interrogatory 20. Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

I did not have sight and sound separation from my assailant even while in segregation. The man who assaulted me could approach my cell when he was going to or from the yard. He came straight to my door, put the trayhole down, and yelled at me to drop the charges. I complained about this to Lt. Northcutt, Captain Malone, and Warden Evans, but they did not take action. I do not feel safe using the shower in segregation because I fear retaliation.

In addition to information available in the Complaint at paragraph 38, the Responding Plaintiff answers this interrogatory as follows based on the current state

of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Defendants, as supervisors, are responsible for the safety and security of the incarcerated people in their care. As Commissioner, Defendant Dunn is responsible for the direction, supervision, and control of the Department of Corrections. As Associate Commissioner, Defendant McDonnell is responsible for ensuring the effective daily operations of prison facilities. Defendant Greg Lovelace is the Deputy Commissioner for Maintenance for the Alabama Department of Corrections and Defendant Lovelace is responsible for the maintenance and construction of correctional facilities. Defendant Grantt Culliver is the Institutional Coordinator for the Northern Region of the Alabama Department of Corrections is responsible for planning, monitoring, and reviewing day-to-day operations of correctional institutions in his assigned area, including St. Clair Correctional Facility. As warden at St. Clair, Defendant Estes is responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Assistant Warden Defendants are responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Captain Defendants are responsible for safety of all inmates at the Facility, for supervising the security activities of St. Clair, and the supervision of all subordinate employees. Each of the defendants is at fault when there is a failure to create and enforce adequate policies in the segregation unit to ensure the safety of the prisoners at St. Clair.

The following assaults occurred in the segregation unit due to the failure to promulgate and enforce adequate policies and procedures:

(a) In May or June 2015, Janarious Smith was stabbed by another inmate during yard time in the segregation unit. While walking in the yard area, another inmate was able to remove his handcuffs and stab Mr. Smith, who was handcuffed behind his back, several times with a knife in the back and arm. Mr. Smith was supposed to be on walk-alone and should not have been on the yard with another prisoner.
Oral Communications: Counsel met with Janarious Smith.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs'

73

Second Request for the Production of Documents #9.

(b) In August 2014, Willie Brantley was stabbed by the same prisoner that fatally stabbed Jammy Bell in 2013, after Mr. Brantley was assigned to clean the halls in the segregation unit. The officers failed to secure the food-tray slots on the cell doors prior to sending the prisoner into the unit and the other man was able to stab the prisoner in his leg by sticking a knife attached to a broom handle through his open tray slot. Mr. Brantley was unable to get the attention of the officer in the cube and lost consciousness after approximately 15 minutes. He was treated for his injuries at UAB.
Oral Communications: Counsel met with Willie Brantley.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #8 and 9.

(c) In August 2013, Jammy Bell was fatally stabbed by another prisoner in the segregation unit after an officer failed to follow proper protocol for opening the cell doors.
Oral Communications: Counsel visited with Mark Duke; with Antonio Cheatham; and with Greg Brown.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #2, 8, and 9.

(d) Upon information and belief, Jovar Gamble was stabbed multiple times in August 2012, while housed in the segregation unit. Mr. Gamble was in handcuffs on the walk when another segregation inmate stabbed him.
Documents: See Plaintiffs' First Production of Documents SCP01650-1653.

(e) Upon information and belief, Orlando Porch was assaulted by another inmate while both men were housed in segregation in January 2012.
Documents: See Plaintiffs' First Production of Documents SCP00275-283.

Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.

**INTERROGATORY NO. 27**

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that Defendants do not "adequately consider an inmate's mental health status or history of violent conflict with other prisoners in making housing assignments," and that "inmates with serious mental health problems or histories of repeated violent conflict live in general population and do not get adequate treatment or supervision."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 45-54 and to Plaintiff's response to Interrogatories 10, 11, and 14. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

I am aware, through my own observations and experiences, inmates with serious mental problems and histories of repeated violent conduct live in general population and do not get adequate treatment or supervision, which contributes to the high level of violence.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based

on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Allan Williams was stabbed and seriously injured in 2013 by another prisoner who was believed to be mentally ill.

On December 20, 2013, Michael Mays was stabbed multiple times by another inmate whom is believed to have a history of mental illness and a history of violent conflicts with others yet was assigned to general population.

## INTERROGATORY NO. 28

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that "Former Warden Davenport, as well as Captain Sanders, Lieutenant Carter, and Lieutenant Scott have responded to Plaintiffs' requests to move based on threats to their safety by telling them to arm themselves with knives, by making comments to the effect that they are tough enough to handle potential violence, by telling the threatened prisoners that Defendants do not care what happens to them, or by telling them that the only option for transfer is to be moved into an isolation cell in segregation" and that "[i]f a threatened prisoner agrees to move to an isolation cell in segregation for his safety, Defendants have also denied that request."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by

information through my attorneys:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 45-54, and to Plaintiff's response to Interrogatories 5, 6, 13, and 16. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Capt. Carl Sanders once responded to James Edwards' safety concerns regarding a cellmate who was leaving the cell door open and stealing his property by telling him, "When I see one of y'all on a stretcher, I know it's a problem." Capt. Sanders also told Mr. Edwards that if he really did not like his cell mate, "stab him," which suggests that he expected them to resolve their problems through violence.

In May 2014, Dale Gilley was reassigned from H Dorm to P Block. He requested to not have to go to P Block for fear of being assaulted because P Block is an extremely dangerous block where numerous stabbings have occurred. In response to Mr. Gilley's request to be sent to segregation for his protection or assigned somewhere other than P Block, Lt. Ronald Carter punched him in the face, slammed his head into a wall, and forced him to stay outside the shift office facing the wall for 14 hours. He was then forced to move to P Block, where he remained for three days before getting reassigned to the Honor Dorm.

In addition to Responding Plaintiff, a number of individuals have information relevant to assaults connected to Defendants' failure to respond to safety-related movement requests. These individuals include: Mark Archer, Greg Brown, Mark Duke, Dale Gilley, Tim Jones, Derrick White, Robert Woods.

**INTERROGATORY NO. 29**

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that "vulnerable inmates, including the disabled and elderly, are housed in violent units where their risk of violent attack is increased" and that Defendants'*

*"failure to adequately classify and treat prisoners with mental illness or histories of repeated violent assaults, as well as their failure to provide adequate training or supervision of staff on how to respond to mentally ill or violent prisoners has resulted in substantial harm to Plaintiffs."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

The Responding Plaintiff refers defendants to Plaintiff's response to Interrogatories 10 and 27. On December 20, 2013, Michael Mays was stabbed multiple times by another inmate whom is believed to have a history of mental illness and a history of violent conflicts with others yet was assigned to general population.

In September 2013, Allan Williams was stabbed by a prisoner, who, upon information and belief, is a mentally ill prisoner. Mr. Williams was stabbed while he was walking back from his shower. Upon information and belief, the man who stabbed Mr. Williams had a violent history and had stabbed another prisoner a few years before he stabbed Mr. Williams.

A number of individuals have information relevant to assaults connected to the Defendants' inadequate classification of vulnerable inmates, inadequate policies and procedures related to prisoners with mental health issues. These individuals include: Mark Archer, Greg Brown, Mark Duke, Benjamin Howlet, Tim Jones, Robert Woods

**INTERROGATORY NO. 30**

78

*DESCRIBE all instances in which you have been assigned to share housing with an inmate who has been convicted of a "more serious offense[]" than the offense for which you were convicted; an inmate who has a more "violent institutional history" than you; or an inmate who has "mental health" problems; and IDENTIFY those inmates.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

I am a non-violent offender and transferred to St. Clair to participate in the TC program. I have been housed with many people with more serious offenses than myself. For instance, my assailant, was convicted of First Degree robbery. He also attempted to sexually assault James Harnage before he sexually assaulted myself.

## INTERROGATORY NO. 31

*State whether you consider yourself to be an "older, physically disabled, or otherwise vulnerable" inmate and if so, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; IDENTIFY each and every document and oral communication; and DESCRIBE each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that you are such an inmate; and IDENTIFY all of the "younger prisoners who engage in risky activities" with which you are in a gang, of which you or another member of the putative class are afraid, or of which you are otherwise aware.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and

obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

I feel vulnerable because I fear continued abuse after being sexually assaulted and does not feel safe using the shower in segregation. Further, I feel vulnerable because I am a non-violent offender and am housed with prisoners convicted of violent offenses.

The Responding Plaintiff further refers defendants to the Complaint at Paragraphs 45-54, and to Plaintiff's response to Interrogatories 6, 16-17, 24, and 32. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

## INTERROGATORY NO. 32

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that such Defendant has failed and is continuing to fail to "enforce housing assignments," that that alleged failure "contributes to the high rate of violence and creates significant risk of serious harm," and that such Defendant has "failed to implement adequate changes in procedure and practice to address the substantial risk of serious harm" to you and the putative class.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 55-59, and to Plaintiff's response to Interrogatory 26. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Answering further, and subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

In June 2014 Derrick White was attacked when another prisoner who was not assigned to P or Q strangled him in the hallway between P and Q and later dragged into the showers in Q dorm where he stayed unconscious for about six hours.

Stanley Joe Flambo was assaulted in July 2013, by another prisoner who was not assigned to his dorm, who was armed with a knife and punched him and attempted to force him over the top tier railing of the cell block.

Benjamin Howlet was stabbed in his cell in November 2011, suffering serious injuries, when correctional officers permitted two unauthorized inmates to enter Mr. Howlet's cell.

In February 2015, Brandon Ladd was stabbed during an attempted robbery in his cell in L-Block by an inmate assigned to a different block, who was able to enter his block.

In February 2015, Larry Hill was assaulted in his cell block by multiple inmates who were allowed entry into the cell block by the cube officer.

In January 2015, Micah Mays was stabbed and cut multiple times, suffering injuries to his face, wrists, neck, and shoulders during a robbery attempt in N-Block.

81

His assailants had entered N-Block from a different block.

January 2015, Elliott Blount was robbed and stabbed in his cell in N-Block. Mr. Blount's assailant was assigned to P/Q and was allowed to enter an unassigned living area.

In addition to Responding Plaintiff, a number of individuals have information relevant to the violence connected to non-functioning locks at St. Clair Correctional Facility. These individuals include: James Edwards, Greg Brown, Keon Hardy, Fred Kirksey.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiff's documents:
Flambo v. Davenport, 4:13-cv-001527-VEH-PWG (N.D. Ala. 2013); Howlet v. Davenport, 4:14-cv-001077-AKK-SGC (N.D. Ala. 2014).

## INTERROGATORY NO. 33

*DESCRIBE all transactions, altercations, events, or instances in which or as a result of which you have signed a "living agreement," and in which or as a result of which you have been transferred to an administrative or disciplinary housing unit and state the dates and lengths of those housing assignments.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

There have been zero transactions, altercations, events, or instances in which or as a result of which I have signed a living agreement, and in which or as a result of which I have been transferred to an administrative or disciplinary housing unit. I have felt pressure from my assailant and his friends to sign a living agreement but I refused because I do not feel safe near him or his friends.

## INTERROGATORY NO. 34

*DESCRIBE all transactions, altercations, events, or instances in which or as a result of which you have entered, without authorization, any area of St. Clair or housing unit to which you were not assigned at the time, and DESCRIBE all transactions, altercations, events, or instances in which or as a result of which you have stayed "overnight in a unit or cell to which [you were] not assigned."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

I assert my Fifth Amendment right against self-incrimination to the extent that this interrogatory asks whether I have "entered, without authorization, any area of St. Clair or housing unit to which you were not assigned at the time, and describe all transactions, altercations, events, or instances in which or as a result of which you have stayed "overnight in a unit or cell to which [you were] not assigned" for which there is criminal liability.

**INTERROGATORY NO. 35**

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that Defendants have been and continue to be deliberately indifferent to conditions that you contend violate your and the putative class's rights under the United States Constitution, be deliberately indifferent to the "continuing real and imminent substantial risk of serious physical harm," subject you and other members or the putative class to "unnecessary and wanton infliction of pain, and emotional and physical injury," and fail to "appropriately train, assign, and supervise staff."*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 40-44, 55-59, and 68-70, and to Plaintiff's response to Interrogatories 5, 6, 7, 13-17. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Defendants are aware that the locking mechanism on the majority of cells are broken and have not been repaired, that the cell doors can be easily tampered with, and that Plaintiffs cannot keep other prisoners from entering their cells and prisoners are able to enter or exit their own and other prisoners' cells at any time, even during lockdown. Defendants do not take reasonable measures to ensure prisoners only have access to the housing unit where they are assigned; despite the fact that prisoners are

required to wear colored wristbands that correspond to their housing assignment, Defendants fail to regularly enforce dorm assignments and officers in the cube will frequently let prisoners into a unit where they are not assigned without verifying they reside in the unit.

See Answers to Interrogatory 20.

In addition to Responding Plaintiff, a number of individuals have information relevant to the violence connected to non-functioning locks at St. Clair Correctional Facility. These individuals include: Mark Archer, Greg Brown, Antonio Cheatham, Mark Duke, Maxwell Gray, Keon Hardy, Tim Jones, Michael Mays, Matthew Owens, Larry McGee, Jermaine Tillman, and Robert Woods.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiff's documents:

Bonds v. Lukima, No. 4:11-cv-03615-JHE (N.D. Ala. 2011) (complaint); Eason v. Davenport et al., No. 4:13-cv-00576-VEH-SHC (N.D. Ala 2013) (complaint); Mabry v. Moore, No. 4:13-cv-00199-KOB-HGD (N.D. Ala. 2013) (complaint); Shack v Mason, No. 4:12-cv-00602-RDP-TMP 2014 WL 638169 (N.D. Ala. Feb. 18, 2014); Tillman v. Desnides, No. 4:13-cv-00358-CLS-HGD (N.D. Ala. July 3, 2014) (Magistrate's Report and Recommendation).

## INTERROGATORY NO. 36

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, alteration, event, or instance that in any way supports or tends to support your contentions that such Defendant has violated and continues to violate your and the*

85

*putative class's "rights under the Eighth and Fourteenth Amendments to the United States Constitution," each of Defendants makes or has authority to make final policy for the ADOC, and the ADOC has no administrative remedies "for named Plaintiffs or other members of the plaintiff class to exhaust."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

I and other members of the putative class have had our rights under the Eighth and Fourteenth Amendments violated by Defendants due to mismanagement, poor leadership, overcrowding, inadequate security, and unsafe conditions, including broken and nonfunctioning locks on the majority of cell doors, which have lead to an extraordinarily high homicide rate, weekly stabbings and assaults, and a culture where violence is tolerated.

In addition, I have been made aware by my attorneys of several facts related to this interrogatory. The Defendants are final policymakers in the operation of St. Clair because the ADOC practices and policies allow them to operate without supervision or review. Mandel v. Doe, 888 F.2d 783, 794 (11th Cir. 1989) (prison physician acted as final policymaker where he was "authorized to function without any supervision or review"). Courts have also recognized that "no general, non-medical, system-wide grievance system exists in ADOC prisons." Henderson v. Thomas, 891 F. Supp. 2d 1296, 1310 (M.D. Ala. 2012).

## INTERROGATORY NO. 37

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, alteration, event, or instance that in any way supports or tends to support your contentions that the putative class of "all present and future prisoners at St. Clair Correctional Facility"*

*is so numerous that joinder of all of its members is impracticable, there are questions of law or fact common to the putative class, your claims are typical of the claims of the putative class, you can and will fairly and adequately protect the interests of the putative class, and the putative "class meets the requirements of Rule 23" as alleged in subparts (a) through (f) of Paragraph 78 of the Complaint.*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint at Paragraph 78. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

I am aware that St. Clair houses over 1,000 inmates. In my time at St. Clair, I have seen hundreds of prisoners transferred in and out of the facility. The policies and practices of each Defendant subject all prisoners at St. Clair, present and future, to a substantial and unreasonable risk of significant harm, and the violations suffered by me and other named plaintiffs are typical of claims of the putative class.

## INTERROGATORY NO. 38

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that prosecution of separate claims by the members of the putative class would create a risk of inconsistent or varying adjudications with respect to those individual members*

87

*that would establish incompatible standards of conduct for Defendants, or a risk of adjudications with respect to individual members of the putative class that, as a practical matter, would be dispositive of the interests of the other members of the putative class that were not parties to the individual adjudications or would substantially impair or impede those non-party members' abilities to protect their interests.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

The Defendants inadequate policies and practices have created a dangerous and unsafe environment for all prisoners currently incarcerated at St. Clair Correctional Facility. Defendants policies, practices, acts and omissions, exhibit deliberate indifference to the continuing real and imminent substantial risk of serious physical harm for all prisoners at St. Clair Correctional Facility. Prosecution of separate claims by members of the class risks inconsistent resolution of the dangers faced by all prisoners at St. Clair Correctional Facility.

## INTERROGATORY NO. 39

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that Defendants have acted or refused to act on grounds that apply generally to the putative class so that final injunctive relief or corresponding*

*declaratory relief is appropriate respecting the putative class as a whole.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

The Responding Plaintiff refers defendants to the Complaint and to Plaintiff's response to Interrogatories 5-38. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Final injunctive relief or corresponding declaratory relief is appropriate respecting the putative class as a whole because all defendants are Alabama Department of Corrections (ADOC) officials or are officials at St. Clair Correctional Facility that have violated the putative class's Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment. Defendants have failed to protect plaintiffs from the ongoing real and imminent substantial risk of serious harm posed by the violent and dangerous conditions at St. Clair, where mismanagement, poor leadership, overcrowding, inadequate security, and unsafe conditions, have lead to an extraordinarily high homicide rate, weekly stabbings and assaults, and a culture where violence is tolerated.

These unsafe conditions and inadequate security include broken and nonfunctioning locks on the majority of cell doors, areas in the housing units not visible to the officer stationed there, failure to implement an adequate classification system in determining housing assignments, failure to adequately enforce housing

assignments, and failure to adequately supervise and monitor housing units. Furthermore, Defendants fail to provide adequate rehabilitative and therapeutic programming, including treatment and programming for inmates suffering from mental illness and drug or alcohol addiction. Defendants have also failed to adequately prevent and discipline DOC staff who smuggle contraband, including illegal drugs, into the facility.

Defendants have the responsibility and authority to manage the problems identified by lack of security and inadequate classification as identified in Interrogatories 5-38.

As Commissioner, Defendant Dunn is responsible for the direction, supervision, and control of the Department of Corrections. As Associate Commissioner, Defendant McDonnell is responsible for ensuring the effective daily operations of prison facilities. Defendant Greg Lovelace is the Deputy Commissioner for Maintenance for the Alabama Department of Corrections and Defendant Lovelace is responsible for the maintenance and construction of correctional facilities. Defendant Grantt Culliver is the Institutional Coordinator for the Northern Region of the Alabama Department of Corrections is responsible for planning, monitoring, and reviewing day-to-day operations of correctional institutions in his assigned area, including St. Clair Correctional Facility. As warden at St. Clair, Defendant Estes is responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Assistant Warden Defendants are responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Captain Defendants are responsible for safety of all inmates at the Facility, for supervising the security activities of St. Clair, and the supervision of all subordinate employees. Each of the defendants is at fault when there is a failure to create and enforce adequate policies in the segregation unit to ensure the safety of the prisoners at St. Clair.

## INTERROGATORY NO. 40

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or*

*instance that in any way supports or tends to support your contentions that inmates in an administrative or disciplinary housing unit, "general population," G-dorm, H-dorm, and the Honor Dorm (cellblocks J and K) are subject to the same threats and conditions as you and that your claims are typical of the claims of every St. Clair prisoner regardless of housing assignment, age, medical condition, drug use or abuse, physical condition, mental condition, violent history, or lack of violent history.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

I have lived in an administrative or disciplinary housing unit and the Therapeutic Community Dorm  and I have spent time with people who were in general population. I have observed that inmates in each dorm are subject to the same threats and conditions.

## INTERROGATORY NO. 41

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that updating, replacing, or otherwise repairing the locks at St. Clair will remedy your alleged security and safety problems at St. Clair and that you have previously requested ADOC employees at St. Clair or otherwise to fix cell doors.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and

provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint at Paragraphs 40-44, and to Plaintiff's response to Interrogatories 5, 13, and 25. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

Subject to the specific objection and the General Responses and Objections above, the Responding Plaintiff states the following based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Michael McGregor was stabbed in his cell. Mr. McGregor was asleep in his cell, with the door locked. His assailant was able to enter his locked cell and stabbed him in his arms, chest, back, head, and neck, using two ice picks.

Frankie Johnson was attacked in his cell during lockdown, when cell doors are supposed to be shut and locked, in September 2013. The assailant was able to exit his cell by "tricking" the door open and gained access to his cell by asking the cube officer to open his cell door.

In June 2014 Jodey Waldrop was murdered by another prisoner who was able to enter Mr. Waldrop's cell in the middle of the night when the block was on lockdown, due to the cell door not locking.

In August 2013, Jammy Bell was fatally stabbed by another prisoner in the segregation unit after an officer failed to follow proper protocol for opening the cell doors.

In May 2012, John Rutledge was strangled to death inside his cell in the middle of the night when the cells should have been locked down; multiple assailants were able to enter Mr. Rutledge's cell and hog-tie and strangle him without being observed

by officers.

In May 2011, Derrick Averhart was stabbed in the arm, head, and face by another inmate while handcuffed in his cell in segregation.

In addition to Responding Plaintiff, a number of individuals have information relevant to the violence connected to non-functioning locks at St. Clair Correctional Facility. These individuals include: Mark Archer, Greg Brown, Antonio Cheatham, Michael Christianson, Christopher Chapple, Michael Craig, Tommy Deming, Mark Duke, Terrell French, Maxwell Gray, Keon Hardy, Benjamin Howlet, Fred Kirksey, Larry McGee, Matthew Owens, Derrick White, Robert Woods.

Answering further, and Pursuant to Fed. R. Civ. P. 33(d), and incorporating Specific Response and Objection No. 8 as though fully set forth herein, the Responding Plaintiff hereby identifies the following documents and records from which the answer to this interrogatory may, in substantial part, be ascertained based on the current state of his/her knowledge, belief, and understanding as provided by information through my attorneys:

Plaintiff's documents:
Averhart v. Davenport, no. 2:11-cv-02567-VEH-JEO (N.D. Ala. 2011).

## **INTERROGATORY NO. 42**

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that Defendants "fail to keep inmates who are designated enemies separate during movement times and fail to supervise movement as inmates return from the canteen."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or

otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint, paras. 59-60 and Plaintiff's Response to Interrogatory 9. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery, *see* Plaintiffs' Second Discovery Request, Item #14.

Defendants, as supervisors, are responsible for the safety and security of the incarcerated people in their care. The failure to keep inmates who are designated enemies separate during movement times and fail to supervise movement as inmates return from the canteen falls upon all defendants, individually and collectively. As Commissioner, Defendant Dunn is responsible for the direction, supervision, and control of the Department of Corrections. As Associate Commissioner, Defendant McDonnell is responsible for ensuring the effective daily operations of prison facilities. Defendant Greg Lovelace is the Deputy Commissioner for Maintenance for the Alabama Department of Corrections and Defendant Lovelace is responsible for the maintenance and construction of correctional facilities. Defendant Grantt Culliver is the Institutional Coordinator for the Northern Region of the Alabama Department of Corrections is responsible for planning, monitoring, and reviewing day-to-day operations of correctional institutions in his assigned area, including St. Clair Correctional Facility. As warden at St. Clair, Defendant Estes is responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Assistant Warden Defendants are responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Captain Defendants are responsible for safety of all inmates at the Facility, for supervising the security activities of St. Clair, and the supervision of all subordinate employees. Each of the defendants is at fault when there is a failure to create and enforce adequate policies in the segregation unit to ensure the safety of the prisoners at St. Clair.

Subject to and without waiving the General Responses and Objections set forth

94

above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a)   See Interrog. Answer 20(a).

(b)   See Interrog. Answer 20(f).

### INTERROGATORY NO. 43

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in Paragraph 59, Subparagraphs (a)-(d).*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. The Responding Plaintiff refers defendants to the Complaint, paras. 59-60 and Plaintiff's Response to Interrogatory 9. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery, *see* Plaintiffs' Second Discovery Request, Item #14. The identity of assailants, to the extent that it is known, is protected by the Fifth Amendment right against self-incrimination.

Defendants, as supervisors, are responsible for the safety and security of the incarcerated people in their care. The failure to keep inmates who are designated

enemies separate during movement times and fail to supervise movement as inmates return from the canteen falls upon all defendants, individually and collectively. As Commissioner, Defendant Dunn is responsible for the direction, supervision, and control of the Department of Corrections. As Associate Commissioner, Defendant McDonnell is responsible for ensuring the effective daily operations of prison facilities. Defendant Greg Lovelace is the Deputy Commissioner for Maintenance for the Alabama Department of Corrections and Defendant Lovelace is responsible for the maintenance and construction of correctional facilities. Defendant Grantt Culliver is the Institutional Coordinator for the Northern Region of the Alabama Department of Corrections is responsible for planning, monitoring, and reviewing day-to-day operations of correctional institutions in his assigned area, including St. Clair Correctional Facility. As warden at St. Clair, Defendant Estes is responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Assistant Warden Defendants are responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Captain Defendants are responsible for safety of all inmates at the Facility, for supervising the security activities of St. Clair, and the supervision of all subordinate employees. Each of the defendants is at fault when there is a failure to create and enforce adequate policies in the segregation unit to ensure the safety of the prisoners at St. Clair.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a) See Interrog. Answer 20(a).

(b) See Interrog. Answer 20(f).

(c) See Interrog. Answer 20(m).

(d) Tehron Young was assaulted by another prisoner on or about February 16, 2014. Mr. Young was stabbed by his former cell partner in

96

the chow hall area. While they were cell mates, the two inmates had a series of confrontations culminating in a fight, as a result of which Mr. Young and his assailant signed a living agreement and the assailant was moved to another living area. Two days later, this stabbing occurred and Mr. Young received serious injuries, including a punctured lung, that required treatment at UAB Hospital.

Oral Communications: Counsel met with Tehron Young.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #14.

## INTERROGATORY NO. 44

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in Paragraph 68, Subparagraphs (a)-(e).*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. The identity of assailants, to the extent that it is known, is protected by the Fifth Amendment right against self-incrimination.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my

attorneys:

(a) Jonathan Bishop was held outside for three days on or about May 30 to June 2, 2015. Captain Malone ordered that Mr. Bishop be held overnight in cages outside the facility's segregation unit because there were no cells available for him indoors. These outdoor cells, meant to temporarily house inmates who are awaiting a permanent cell assignment, are not equipped with water or protection from the elements. Mr. Bishop had to endure two rainy days in the outside cages. Officers on duty in segregation during this time included Officer Handley, Officer Anderson, Officer Ambrose, Officer Chapman, and Officer Thompkins.

Oral Communication: Counsel met with Jonathan Bishop.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #9.

(b) Michael Stewart was housed in an outside cage from about February 9, 2015 until February 10, 2015. Mr. Stewart, an inmate who requested to be placed in an isolation cell in segregation because of threats by enemies in population, cut his wrists multiple times in his segregation cell and bled for hours before staff noticed his condition and provided medical intervention. He was returned to segregation on February 18, 2015 and was housed in an outside cage for several hours in the winter without a jacket.

Oral Communications: Counsel met with Michael Stewart.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #9.

(c) Xavier Smith and Cordarious White were held in outside cages and then forced to sleep in the property room on or about January 11, 2015. Mr. White's hands were still shackled behind his back while in the property room. Both Mr. Smith and Mr. White were forced to stay overnight in these cages during freezing January weather with no protection aside from their DOC uniforms.

Oral Communications: Counsel met with Xavier Smith. Counsel met with Cordarious White.

Documents: Counsel is currently seeking documents relating to the incident

currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #9.

(d) Larry Nesbitt, who is currently incarcerated for a drug possession following probation revocation based on a technical violation, should not be housed at St. Clair, a maximum security prison. Mr. Nesbitt is eligible for housing at a lower-security facility and the fact that he remains in the segregation unit at St. Clair demonstrates the failure to properly classify inmates based on security status.

Oral Communications: Counsel met with Larry Nesbitt.

Documents: Counsel is seeking further information on the classification of prisoners currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #9.

(e) Adam Hagood was sexually assaulted by another prisoner on or about July 19, 2014. Mr. Hagood was lying in his bed when an assailant entered Mr. Hagood's cell in the M-Block with a knife and sexually assaulted him. Mr. Hagood. reported that he was suicidal and was kept in a crisis cell for five days. He was then sent to an isolation cell in segregation in the same unit as his assailant. Mr. Hagood did not receive continuing mental health care and he did not receive the outcome of the I&I investigation. He continued to face retaliation.

Oral Communications: Counsel met with Adam Hagood.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #9.

## INTERROGATORY NO. 45

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* **IDENTIFY** *each and every document and oral communication; and* **DESCRIBE** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions in Paragraph 77, Subparagraphs (a)-(f).*

Subject to and without waiving the General Responses and Objections set forth

99

above, the Responding Plaintiff answers this interrogatory as follows:

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

(a) <u>See</u> Interrog. Answer 20(b).

(b) <u>See</u> Interrog. Answer 20(d).

(c) <u>See</u> Interrog. Answer 20(l).

(d) <u>See</u> Interrog. Answer 20(r).

(e) <u>See</u> Interrog. Answer 20(s).

(f) <u>See</u> Interrog. Answer 44(e).

## INTERROGATORY NO. 46

*Whether a victim, an assailant, a witness, or other individual, specifically* ***IDENTIFY*** *(with reference to the paragraph implicated) every unnamed prisoner (including a prisoner who is denoted by initials only), correctional officer, and all other individuals who are or were involved with the allegations of Paragraph 24, Subparagraphs (a)-(ah); Paragraph 25, Subparagraphs (a) - (b); Paragraph 36,*

*Subparagraphs (a)-(ao); Paragraph 38, Subparagraphs (a) -(d); Paragraph 43, Subparagraphs (a) -(d); Paragraph 47, Subparagraphs (a)-(d); Paragraph 53, Subparagraphs (a)-(l); Paragraph 58, Subparagraphs (a)-(i); Paragraph 59, Subparagraphs (a)-(d); Paragraph 68, Subparagraphs (a)-(e); and Paragraph 77, Subparagraphs (a)-(f).*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The detailed descriptions provided previously in this set of answers identifies all prisoners, correctional officers, and other individuals involved in the allegations, unless their names are unknown. Thus, for Paragraph 24, Subparagraphs (a)-(ah), please refer to Interrogatory 18. For Paragraph 25, Subparagraphs (a) - (b), please see Interrogatory 19. For Paragraph 36, Subparagraphs (a)-(ao), see Interrogatory #20. For Paragraph 47, Subparagraphs (a)-(d), please see Interrogatory 23. For Paragraph 53, Subparagraphs (a)-(l), please see Interrogatory 24. For Paragraph 58, Subparagraphs (a)-(i), please see Interrogatory 25. For Paragraph 59, Subparagraphs (a)-(d), please see Interrogatory 43. For Paragraph 68, Subparagraphs (a)-(e), please see Interrogatory 44. For Paragraph 77, Subparagraphs (a)-(f), please see Interrogatory 45.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. The identity of assailants, to the extent that it is known, is protected by the Fifth Amendment right against self-incrimination.

The Responding Plaintiff states the following based on the current state of my

knowledge, belief, and understanding as provided by information through my attorneys:

Information on paragraph 38 and paragraph 43 are included below:

Paragraph 38:
b. victim: Willie Brantley
c. witnesses: Memphis Mitchell and Mark Duke

Paragraph 43:
a. witnesses: Frederick Kirksey and Christopher Chapple
b. witnesses: Memphis Mitchell and Mark Duke

## INTERROGATORY NO. 47

*As to each Defendant, state in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* **IDENTIFY** *each and every document and oral communication; and* **DESCRIBE** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that each Defendant has "prevented victims of sexual abuse at St. Clair from accessing outside support," has implemented "policies and practices [that] heighten the risk of sexual assault," and does not "adequately identify potential predators and victims."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. The Responding Plaintiff refers defendants to the Complaint, paras. 77 and Plaintiff's Response to Interrogatory 45. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through

discovery.

Defendants, as supervisors, are responsible for the safety and security of the incarcerated people in their care. The failure to keep inmates safe from sexual assault falls upon all defendants, individually and collectively. As Commissioner, Defendant Dunn is responsible for the direction, supervision, and control of the Department of Corrections. As Associate Commissioner, Defendant McDonnell is responsible for ensuring the effective daily operations of prison facilities. Defendant Greg Lovelace is the Deputy Commissioner for Maintenance for the Alabama Department of Corrections and Defendant Lovelace is responsible for the maintenance and construction of correctional facilities. Defendant Grantt Culliver is the Institutional Coordinator for the Northern Region of the Alabama Department of Corrections is responsible for planning, monitoring, and reviewing day-to-day operations of correctional institutions in his assigned area, including St. Clair Correctional Facility. As warden at St. Clair, Defendant Estes is responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Assistant Warden Defendants are responsible for the day-to-day operations of the prison, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Captain Defendants are responsible for safety of all inmates at the Facility, for supervising the security activities of St. Clair, and the supervision of all subordinate employees. Each of the defendants is at fault when there is a failure to create and enforce adequate policies in the segregation unit to ensure the safety of the prisoners at St. Clair. .

Defendants do not conduct a comprehensive initial assessment and sexual assaults have occurred as a result of vulnerable prisoners being housed in the same dorm as prisoners with a high risk of being sexually abusive. Sexual assaults have occurred within the Therapuetic Community in H dorm and victims had lower-level custody levels and were transferred to St. Clair in order to participate in the treatment program.

Defendants fail to provide victims with access to outside victim advocates, such as providing contact information for victim advocacy or rape crisis organizations, and communication should be enabled in a confidential manner. Defendants have prevented victims of sexual abuse at St. Clair from accessing outside support and have not provided sufficient mental health care within the facility.

103

And Defendants fail to properly investigate claims of sexual abuse and sexual assaults. Investigators are supposed to gather and preserve all evidence, interview any involved parties and witnesses, and review prior complaints and reports of sexual abuse of the suspected perpetrator.  The prison has an obligation to inform the victim about the results of any investigation and whether the allegation has been found to be substantiated, unsubstantiated, or unfounded.  Victims of sexual abuse at St. Clair have never heard the results of I&I investigations.

## INTERROGATORY NO. 48

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that you, individually, are subject to a substantial risk of harm due to "the risk of being sexually abused or risk of being sexually abusive towards other people."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint, paras. 77  and Plaintiff's Response to Interrogatory 45.   Defendants have the sole responsibility for rape prevention policies and that all inmates are subject to Defendants actions and practices. The risk of harm stemming from Defendants' deliberate indifference is the same.

## INTERROGATORY NO. 49

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or*

*instance that in any way supports or tends to support the contention that the "predators" referred to Paragraph 74 or those who are at a "high risk of being sexually abusive" referred to in Paragraph 75 are themselves subject to a "substantial risk of harm due to sexual abuse."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Complaint, paras. 12, 13, 14, and 20. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.

Though Defendants are responsible for the care of prisoners in their custody, Defendants have allowed a dangerous and violent environment to flourish. Despite the extraordinary rate of violence and homicides at St. Clair, Defendants have failed to take reasonable, necessary and appropriate steps to prevent and remedy these dangerous conditions. In such a system, all prisoners are subject to a substantial risk of harm due to abuse, both physical and sexual abuse.

St. Clair's inadequate security, and unsafe conditions, including broken and nonfunctioning locks on the majority of cell doors, has led to an extraordinarily high homicide rate, constant stabbings and assaults, including sexual assaults, and a culture where violence is tolerated.

These realities are evident by looking at the amount of knives that have been found in contraband. The following incident reports, obtained during discovery, all

105

mention the presence of knives at St. Clair:

SCCF-14-00267 (Mar. 5, 2014); SCCF-14-00410 (Apr. 2, 2014); SCCF-14-00580 (Apr. 24, 2014); SCCF-14-00601 (May 1, 2014); SCCF-14-00854 (Jun. 3, 2014); SCCF-14-00856 (Jun. 3, 2014); SCCF-14-00864 (Jun. 4, 2014); SCCF-14-01024 (Jul. 6, 2014); SCCF-14-01042 (Jul. 8, 2014); SCCF-14-01119 (Jul. 22, 2014); SCCF-14-01165 (Aug. 1, 2014); SCCF-14-01176 (Aug. 4, 2014); SCCF-14-01317 (Sep. 3, 2014) SCCF-14-01327 (Sep. 4, 2014); SCCF-14-01418 (Sep. 23, 2014); SCCF-14-01469 (Oct. 3, 2014); SCCF-14-01493 (Oct. 5, 2014); SCCF-14-01603 (Nov. 3, 2014); SCCF-14-10611 (Nov. 4, 2014); SCCF-14-01778 (Dec. 3, 2014); SCCF-14-01776 (Dec. 3, 2014); SCCF-14-01783 (Dec. 4, 2014); SCCF-15-00018 (Jan. 5, 2015); SCCF-15-00020 (Jan. 5, 2015); SCCF-15-0026 (Jan. 6, 2015); SCCF-15-00033 (Jan. 7, 2015); SCCF-15-00098 (Jan. 20, 2015); SCCF-15-00115 (Jan. 12, 2015); SCCF-15-00158 (Feb. 2, 2015); SCCF-15-00167 (Feb. 3, 2015); SCCF-15-00224 (Feb. 18, 2015); SCCF-15-00276 (Feb. 26, 2015).

In an environment where prisoners feel that they must arm themselves or risk being killed, maimed, or harmed, everyone could find themselves in the position of both an assailant or a victim.

## INTERROGATORY NO. 50

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* **IDENTIFY** *each and every document and oral communication; and* **DESCRIBE** *each and every transaction, altercation, event, or instance that in any way supports or tends to support the contention that "data . . . show[s] that the vast majority of prisoners suffer from one or both of these afflictions" (i.e., "mental illness, disability and drug addiction").*

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

The Bureau of Justice Statistics reports that 56% of state prisoners have a mental health problem. In addition, the Bureau of Justice Statistics reports that 53% of state prisoners met the DSM-IV criteria for drug dependence or abuse. And 41.7% of state prisoners have both a mental illness and a drug addiction. In addition to the prevalence of mental illness and drug addiction, 31% of state prisoners have a physical, mental, or learning disability.

Sources

Christopher J. Mumola and Jennifer C. Karberg, Drug Use and Dependence, State an Federal Prisoners, 2004, Bureau of Justice Statistics Special Report, U.S. Dept of Justice: Office of Justice Programs (October 2006, Revised 1.19/07)

Doris J. James and Lauren E. Glaze, Mental Health Problems of Prison and Jail Inmates, Bureau of Justice Statistics Special Report, U.S. Department of Justice, Office of Justice Programs (September 2006, Revised 12/14/06).

Peiyun She, David C. Stapleton, *A Review of Disability Data for the Institutional Population*, Rehabilitation Research and Training Center on Disability Demographics and Statistics: Cornell University (May 2006).

## INTERROGATORY NO. 51

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that you would be willing to "fairly and adequately protect the interests of" the unnamed assailants referred to in Paragraphs (including each respective Paragraph's Subparagraphs) 25, 36, 38, 43, 47, 53, 58, 59, 68, and 77.*

Responding Plaintiff objects to this interrogatory to the extent it seeks

information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint, paras. 12, 13, 14, and 20. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

Though Defendants are responsible for the care of prisoners in their custody, Defendants have allowed a dangerous and violent environment to flourish. Despite the extraordinary rate of violence and homicides at St. Clair, Defendants have failed to take reasonable, necessary and appropriate steps to prevent and remedy these dangerous conditions. St. Clair's inadequate security, and unsafe conditions, including broken and nonfunctioning locks on the majority of cell doors, has led to an extraordinarily high homicide rate, frequent stabbings and assaults, including sexual assaults, and a culture where violence is tolerated. In such a system, all prisoners are at a risk of being assaulted.

The fact that prisoners at St. Clair can be both victim and assailant is also evident by looking at the prevalence of knives that have been found in contraband. The following incident reports, obtained during discovery, all mention the presence of knives at St. Clair:

108

SCCF-14-00267 (Mar. 5, 2014); SCCF-14-00410 (Apr. 2, 2014); SCCF-14-00580 (Apr. 24, 2014); SCCF-14-00601 (May 1, 2014); SCCF-14-00854 (Jun. 3, 2014); SCCF-14-00856 (Jun. 3, 2014); SCCF-14-00864 (Jun. 4, 2014); SCCF-14-01024 (Jul. 6, 2014); SCCF-14-01042 (Jul. 8, 2014); SCCF-14-01119 (Jul. 22, 2014); SCCF-14-01165 (Aug. 1, 2014); SCCF-14-01176 (Aug. 4, 2014); SCCF-14-01317 (Sep. 3, 2014) SCCF-14-01327 (Sep. 4, 2014); SCCF-14-01418 (Sep. 23, 2014); SCCF-14-01469 (Oct. 3, 2014); SCCF-14-01493 (Oct. 5, 2014); SCCF-14-01603 (Nov. 3, 2014); SCCF-14-10611 (Nov. 4, 2014); SCCF-14-01778 (Dec. 3, 2014); SCCF-14-01776 (Dec. 3, 2014); SCCF-14-01783 (Dec. 4, 2014); SCCF-15-00018 (Jan. 5, 2015); SCCF-15-00020 (Jan. 5, 2015); SCCF-15-00026 (Jan. 6, 2015); SCCF-15-00033 (Jan. 7, 2015); SCCF-15-00098 (Jan. 20, 2015); SCCF-15-00115 (Jan. 12, 2015); SCCF-15-00158 (Feb. 2, 2015); SCCF-15-00167 (Feb. 3, 2015); SCCF-15-00224 (Feb. 18, 2015); SCCF-15-00276 (Feb. 26, 2015).

## INTERROGATORY NO. 52

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground, **IDENTIFY** each and every document and oral communication, and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that the claims of Mark Duke are typical of the claims of the unnamed "prisoner" in Paragraph 36, Subparagraph (aj), and Paragraph 58, Subparagraph (g); that the claims of James Edwards are typical of the claims of the unnamed "cell mate" in Paragraph 47, Subparagraph (c); that the claims of Dale Gilley are typical of the claims of the unnamed "prisoner" in Paragraph 36, Subparagraph (w); that the claims of Frankie Johnson are typical of the claims of the unnamed assailant in Paragraph 36, Subparagraphs (u) and (ai); that the claims of Michael Mays referred to in Paragraph 36, Subparagraph (ah) are typical of the claims of Charles Hastings; that the claims of Allan Williams are typical of the claims of the unnamed prisoner in Paragraph 53, Subparagraph (i); and that the claims of Robert Woods are typical of the claims of the unnamed "inmate" in Paragraph 25, Subparagraph (b), and the unnamed thief in Paragraph 47, Subparagraph (d); that the claims of Michael McGregor are typical of the claims of the unnamed "assailant" in Paragraph 36, Subparagraph (c); and that the claims of John Miller are typical of the claims of the unnamed "assailant" in Paragraph 36, Subparagraph (l).*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint, paras. 12, 13, 14, and 20. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.

As stated in Interrogatory 51, Defendants have allowed a dangerous and violent environment to flourish. Despite the extraordinary rate of violence and homicides at St. Clair, Defendants have failed to take reasonable, necessary and appropriate steps to prevent and remedy these dangerous conditions. St. Clair's inadequate security, and unsafe conditions, including broken and nonfunctioning locks on the majority of cell doors, has led to an extraordinarily high homicide rate, frequent stabbings and assaults, including sexual assaults, and a culture where violence is tolerated. In such a system, all prisoners are at a risk of being assaulted.

## INTERROGATORY NO. 53

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that "functioning cameras in the housing blocks" would remedy your alleged security and safety problems at St. Clair.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks

110

information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

There are blind spots in all of the blocks that cannot be seen by the cube officer, including the shower area, the TV/day room, and inside all of the cells. There are also blind spots in the back of H-dorm where my assault took place. Without functioning cameras, large sections of the housing blocks in general population are not within the view of any officer the majority of the day. In addition, the cells are not only blind spots but they are also nearly sound-proof. Inmates can scream in their cells and cube officers, the only officers present in the block for the majority of the day, are not able to hear or provide assistance.

The identity of assailants, to the extent that it is known, is protected by the Fifth Amendment right against self-incrimination.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

Many assaults have occurred in blind spots and cameras could prevent further incidents. Such assaults include, but are not limited to:

(a) <u>See</u> Interrog. Answer 20(a)

(b) <u>See</u> Interrog. Answer 20(c)

(c) <u>See</u> Interrog. Answer 20(d)

(d) <u>See</u> Interrog. Answer 20(g)

111

(e) <u>See</u> Interrog. Answer 20(i)

(f) <u>See</u> Interrog. Answer 20(j).

(g) <u>See</u> Interrog. Answer 20(l).

(h) <u>See</u> Interrog. Answer 20(o)

(i) <u>See</u> Interrog. Answer 20(r)

(j) <u>See</u> Interrog. Answer 20(s)

(k) <u>See</u> Interrog. Answer 20(w)

(l) <u>See</u> Interrog. Answer 20(y)

(m) On or about June 11, 2014, Derrick White was Mr. White was choked and dragged unconscious into the showers in Q block, where he was stabbed and burned by multiple inmates, and remained for hours, without being discovered by staff.
Oral Communications: Counsel met with Derrick White.
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #7.

(n) On or about June 3, 2014, Jodey Waldrop was murdered in his cell by another prisoner in the middle of the night.
Oral Communications: Counsel met with Antonio Cheatham, Mark Duke, Fred Kirksey, Greg Brown, Keon Hardy and Christopher Chapple,
Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. <u>See</u> Plaintiffs' Second Request for the Production of Documents #7.

(o) On or about May 11, 2014, Antonio Cheatham was assaulted by another prisoner in the bathroom of the H dorm, a known blind spot,

while no correctional officers were in view.  Part of his ear was bitten off and flushed down a toilet before any officers responded to the struggle.

Oral Communications:  Counsel met with Antonio Cheatham.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #7.

(p) On or about January 6, 2014, Timothy Gayle stabbed and killed Marquette Cummings in the TV room in M-block, a blind spot to the cube officer. Approximately twenty to thirty minutes passed before guards stepped in.

Oral Communications: Counsel met with David Crenshaw and Keon Hardy.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #2 and 7.

(q) In May, 2012, John Rutledge was strangled to death by other prisoners who entered his cell in the middle of the night when cells should have been on lockdown.

Oral Communications: Counsel met Fred Kirksey, Greg Brown, and James Heath

Documents: DOC Incident reports, filed in Baker v. DOC, Montgomery County Circuit Court. (SCCF-12-00721).  Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery.  See Plaintiffs' Second Request for the Production of Documents #2 and 7.

(r) On or about October 15, 2011, Jabari Bascomb was stabbed to death in his cell, a blind spot to the cube officer, after another prisoner broke into his cell.

Oral Communications: Counsel met with Antonio Cheatham.

Documents: Counsel is currently seeking documents relating to the incident currently in the possession of ADOC through discovery. See Plaintiffs' Second Request for the Production of Documents #2 and 7.

(s) Upon information and belief, on January 3, 2011, Anthony Moss was assaulted in his cell, a blind spot to the cube officer, and suffered an injury which caused him to lose the use of his left eye. Source: PACER Moss v. Davenport, No. 4:11-cv-01397-KOB-RRA (N.D. Ala. 2011) Documents: See Plaintiffs' Production of Documents SCP00264-274.

Other incidents include:

1.    The stabbing death of Jodey Waldrop in his cell.
2.    The stabbing death of Marquette Cummings in an area not monitored by Defendants.
3.    The strangling death of John Rutledge in his cell.
4.    The stabbing death of Jabari Bascomb.
5.    A near-fatal assault Mark Duke experienced while on the G-yard.
6.    The near-fatal assault of Muhammad Al-Ameen, also known as Terry Rivers.
7.    The near-fatal assault of Michael Mays.
8.    The near-fatal assault of Freddie Stallworth.
9.    The near-fatal assault of Benjamin Howlett.
10.   The stabbing of Alister Cook.
11.   The stabbing of Terrell French.
12.   An assault Mark Duke experienced while in his cell by a prisoner who was not authorized to be in his living area.
13.   An assault of Anthony Moss leading to partial blindness.
14.   A sustained assault of Derrick White in multiple common areas.
15.   An assault of Derrick White in the gym.
16.   The assault in which Antonio Cheatham was disfigured.
17.   An assault Dale Gilley experienced while returning to his living area after a legal visit.
18.   An assault and hostage taking that began in a common area and continued into the victim's assigned cell.

## INTERROGATORY NO. 54

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral*

*communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that there are a "large number of knives and other weapons at" St. Clair.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

The Responding Plaintiff refers defendants to the Complaint, paras. 36 and Plaintiff's Response to Interrogatory 20. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.

My assailant used a knife when he sexually assaulted me. Through my personal observations, I see knives on a daily basis. Men are able to make knives out of bedframes and sharpen them, etc. or a knife can be purchased for approximately one to three bags of coffee.

The following incident reports, obtained during discovery, all mention the presence of knives at St. Clair: SCCF-14-00267 (Mar. 5, 2014); SCCF-14-00410 (Apr. 2, 2014); SCCF-14-00580 (Apr. 24, 2014); SCCF-14-00601 (May 1, 2014); SCCF-14-00854 (Jun. 3, 2014); SCCF-14-00856 (Jun. 3, 2014); SCCF-14-00864 (Jun. 4, 2014); SCCF-14-01024 (Jul. 6, 2014); SCCF-14-01042 (Jul. 8, 2014); SCCF-14-01119 (Jul. 22, 2014); SCCF-14-01165 (Aug. 1, 2014); SCCF-14-01176 (Aug. 4, 2014); SCCF-14-01317 (Sep. 3, 2014) SCCF-14-01327 (Sep. 4, 2014); SCCF-14-01418 (Sep. 23, 2014); SCCF-14-01469 (Oct. 3, 2014); SCCF-14-01493 (Oct. 5, 2014); SCCF-14-01603 (Nov. 3, 2014); SCCF-14-10611 (Nov. 4, 2014); SCCF-14-01778 (Dec. 3, 2014); SCCF-14-01776 (Dec. 3, 2014); SCCF-14-01783 (Dec. 4, 2014); SCCF-15-00018 (Jan. 5, 2015); SCCF-15-00020 (Jan. 5, 2015); SCCF-15-00026 (Jan. 6, 2015); SCCF-15-00033 (Jan. 7, 2015); SCCF-15-00098 (Jan. 20, 2015); SCCF-15-00115

(Jan. 12, 2015); SCCF-15-00158 (Feb. 2, 2015); SCCF-15-00167 (Feb. 3, 2015); SCCF-15-00224 (Feb. 18, 2015); SCCF-15-00276 (Feb. 26, 2015).

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

The prevalence of knives and other weapons due to the constant use of knives and other weapons that occur at St. Clair. Such incidents include, but are not limited to:

(a) The assault of Michael McGregor in April 2015

(b) The sexual assault of William Casey in April 2015

(c) The sexual assault of Anthony Zeller in April 2015

(d) The assault of Jamal Woods in March 2015

(e) The assault of Nakia Echols in March 2015

(f) The assault of David Beech in March 2015

(g) The assault of James Dorriety in March 2015

(g) The assault of Brandon Ladd in February 2015

(h) The assault of Larry Hill in February 2015

(i) The sexual assault of John Miller in February 2015

(j) The assault of Micah Mays in January 2015

(k) The assault of Justen Stinson in January 2015

(l) The assault of Elliot Blount in January 2015

(m) The assault of Derrick LaKeith Brown in January 2015

(n) The sexual assault of Dugan Clayton in January 2015

(o) The sexual assault of James Harnage in December 2014

(p) The assault of Frankie Johnson in November 2014

(q) The assault of Victor Russo in August 2014

(r) The fatal-assault of Jammy Bell in August 2013

See also, Interrogatory Number 20.

In addition, the following prisoners that were injured or killed when they were assaulted by other prisoners:   Timothy Duncan, Jodey Waldrop, Marquette Cummings, Jammy Bell, John Rutledge, Jabari Bascomb, Alister Cook, Allan

116

Williams, Terrell French, Terry Rivers a/k/a Muhammad Al-Ameen, Anthony Moss, Derrick White, Antonio Cheatham, Michael Mays, Mark Duke, Jovar Gamble, Orlando Porch, Willie Brantley, Derrick Averhart, Freddie James Stallworth, Christopher Chapple, Benajmin Howlet, and Stanley Jo Flambo.

## INTERROGATORY NO. 55

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that certain types, classes, or other groups of inmates are more or less vulnerable than other inmates at St. Clair.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

I feel vulnerable because I fear continued abuse after being sexually assaulted and I do not feel safe using the shower in segregation.

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

Age, physical disability or mental impairment are among the circumstances that cause some prisoners at St. Clair to be vulnerable. Inmates who are not armed are vulnerable. Inmates who have canteen items are vulnerable. Inmates who are attempting to keep a clean disciplinary record and avoid violent conflict are vulnerable. Inmates who are not in locked cells are vulnerable. Robert Woods identifies as vulnerable because he is 57 years old and is physically disabled. James Edwards identifies as vulnerable because he is 55 years old and is a dialysis patient. William Casey is vulnerable because he continued to face fear of retaliation after he was sexually assaulted. Victor Russo, who is 52 years old, was vulnerable when he was robbed by three younger inmates armed with knives. And Tim Jones, a 60 year old disabled prisoner, was vulnerable and was robbed at knife point by a prisoner who was 23 years old.

## INTERROGATORY NO. 56

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground, **IDENTIFY** each and every document and oral communication, and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contention that an ADOC official's attempts to mediate and resolve a conflict between inmates is "egregious."*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff states the following based on the current state of my knowledge, belief, and understanding as provided by information through my attorneys:

The Responding Plaintiff refers defendants to the Complaint, para. 66 and

118

Plaintiff's Response to Interrogatory 20.  Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.  Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.

The specific instance referenced in Complaint para. 66 and above regarding egregious behavior, concerns Captain Sanders and is documented in the incident reports provided by Defendants specific to requests for protective custody, ADOC-0002166.

Second, over the course of a year there over 40 instances of inmates requesting to be moved or placed in lock-up for their protection, almost always because of an unpaid drug debt

Further incidents demonstrating the indifference or active objections to requests for protection from ADOC officials include but are not limited to:

(a) See Interrog. Answer 20(m).

(b) See Interrog. Answer 23(d).

## INTERROGATORY NO. 57

*State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground;* ***IDENTIFY*** *each and every document and oral communication; and* ***DESCRIBE*** *each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that you can state a claim under the Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972 (2003).*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and

119

obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information.

Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter.

The Responding Plaintiff refers defendants to the Complaint, paras. 80-82. Responding Plaintiff is not attempting to state a claim under the Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972 (2003) ("PREA"). PREA does not create a separate cause of action

## INTERROGATORY NO. 58

*As to each Defendant, State in detail each and every fact, assertion, position, contention, legal theory or basis, or other ground; **IDENTIFY** each and every document and oral communication; and **DESCRIBE** each and every transaction, altercation, event, or instance that in any way supports or tends to support your contentions that Defendants have failed to comply with the Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972 (2003).*
*Dated: August 14, 2015.*

Responding Plaintiff objects to this interrogatory to the extent it seeks information protected by attorney-client privileged and/or the work product doctrine. Responding Plaintiff objects to this interrogatory to the extent that it seeks information that is matter public record, already in the Defendants' possession, or otherwise readily available to the Defendants, and, therefore, may be accessed and obtained by the Defendants with less burden than the plaintiffs can identify and provide requested information. Subject to and without waiving the General Responses and Objections set forth above, the Responding Plaintiff answers this interrogatory as follows:

The Responding Plaintiff refers defendants to the Plaintiff's Response to

Interrogatory 45 and 47. Plaintiffs reserve the right to supplement this response to the extent it is further informed by documents and information produced in discovery and/or the opinion of experts retained by the parties to testify in the trial of this matter. Counsel is currently seeking additional documents relating to the incident currently in the possession of ADOC through discovery.

Defendants have failed to comply with the PREA standard requiring everyone entering the prison to receive a comprehensive initial assessment during intake screening to assess the risk of being sexually abused or risk of being sexually abusive towards other people.

Defendants have failed to comply with PREA standards requiring that they maintain adequate staffing levels and take into consideration such factors as components of the physical plant (including blind-spots), the composition of the population, and the number and placement of supervisory staff. Defendants have not maintained adequate staffing levels and St. Clair also has numerous blind spots in which sexual assaults have occurred.

Defendants have failed to comply with the PREA standards regarding ongoing medical and mental health care after sexual abuse occurs.

Defendants have failed to comply with PREA standards regarding the investigation of claims of sexual abuse and sexual assaults and to inform the victim about the results of any investigation and whether the allegation has been found to be substantiated, unsubstantiated, or unfounded. Victims of sexual abuse at St. Clair have never heard the results of I&I investigations.

Defendants have failed to comply with PREA standards by placing victims in segregation without an assessment of alternative means of housing and access to programs.

Defendants have failed to comply with PREA standards requiring protection of victims of sexual abuse from further retaliation. Victims at St. Clair have faced retaliation from their abusers as they do not have sight and sound separation, even when placed in segregation.

For individuals impacted at St. Clair, see Interrogatory Responses No. 45 and No. 47.

Source: Prison Rape Elimination Act, National Standards of 2012.

## VERIFICATION

I have read the foregoing Responses, which are based on a diligent and reasonable effort by me to obtain information currently available. I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available. Subject to these limitations, these Responses are true to the best of my present knowledge, information, and belief.

Subscribed and sworn to under the pains and penalties of perjury this _10_ day of September 2015.

_____
John Miller

As to Objections:

_____

Bryan A. Stevenson (ASB-3184-N75B)
Charlotte R. Morrison (ASB-5897-T80M)
Jennae R. Swiergula (ASB-8265-A35S)
Carla C. Crowder (ASB-8573-L74C)
Ryan C. Becker (ASB-7228-R48B)
Equal Justice Initiative
122 Commerce Street
Montgomery, AL 36104
PH: (334) 269-1803
FX: (334) 269-1806
email: bstevenson@eji.org
        cmorrison@eji.org
        jswiergula@eji.org
        ccrowder@eji.org
        rbecker@eji.org

*Counsel for Plaintiffs*

Dated: September _14_, 2015