# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JOHN THOMAS MILLER, et al** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:17-CV-00180-LCB-JEO** |
| | ) | |
| **JEFFERSON S. DUNN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>DEFENDANTS' RESPONSE</u>

In response to Plaintiffs' Joint Motion to Compel Production of Certain Defendants' Emails (the "Motion[1]"), DOC Defendants state as follows:

Defendants have worked with Plaintiffs to narrow search parameters to uncover emails that actually relate to the Plaintiffs' claims and allegations. Plaintiffs instead have insisted on overly broad search terms which would yield largely unrelated documents or attorney client privileged documents. Plaintiffs have refused to bear the financial burden of these unnecessary searches. Defendants have incurred more than $2,000 with Alabama's Office of Information Technology regarding this issue. Even though Defendants were still attempting to meet Plaintiffs' demands, Plaintiffs filed their Motion to Compel. In the Motion Plaintiffs submit a new set of

---

[1] The Motion is Doc. 97 in the Miller case; Doc. 82 in the McGregor case; Doc. 80 in the Townsel case, Doc. 43 in the Casey case; and Doc. 52 in the Zeller case.

search terms which they request the Defendants produce within 7 days of receipt[2].

Plaintiffs' demanded search terms are not proportional to the claims in these cases.

## I.    Searching DOC's emails

It is not a simple process to search through emails maintained by the Department of Corrections ("DOC"). The bill establishing Alabama's Office of Information Technology ("OIT") was signed into law on May 21, 2013. See oit.alabama.gov/about (accessed 2/22/19). However, it was not until October 1, 2017 that the Information Service Division of the Department of Finance was transferred to the OIT. *Id.* At some point after 2015, emails maintained by current DOC employees were transferred to an outsider vendor to be remotely maintained and preserved. This outside entity is Enterprise Vault.cloud.

Individual DOC employees may maintain some emails on their personal computer and the DOC's servers maintain some emails, but all of DOC's emails are maintained and preserved by Enterprise Vault.cloud. DOC personnel do not have the ability to search the emails maintained by Enterprise Vault.cloud and can only retrieve these emails by first going through the State's OIT. Only certain members of the OIT have the authority to search the emails in question. Further, OIT charges

---

[2] See Plaintiffs "Third Proposal" attached as Exhibit A to Plaintiff's Motion. This is actually the fourth proposal that Plaintiffs have sought; however, this "proposal" is substantially similar to the first proposal which Defendants pointed out was unnecessarily overly broad and not proportional to these cases.

for its time in searching emails and the DOC does not have a mechanism for paying OIT to search DOC's emails.

To retrieve DOC emails, Defense counsel has to navigate through two different state agencies and a third-party vendor. Since even the narrowest search parameters requested by Plaintiffs (Section I.1.A. of the Third Proposal) raised such a great number of hits, the sample emails had to be ingested into a document management system before Defense counsel could even begin the review of these documents. Due to the complexity and cost of searching emails from DOC personnel, counsel for Defendants endeavored to limit the search terms to relevant issues which would produce emails that are germane to the claims and defenses in the present lawsuit. Another consideration for Defense counsel was eliminating, to the extent possible, hits on attorney-client privileged emails (not only in these matters, but from other lawsuits and legal advice in general). Defense counsel also hoped to limit emails related to security issues or private information which should not be provided to individuals incarcerated by the DOC. Further, before running the searches counsel for Defendants sought to narrow the search terms so that OIT only had to perform one search to limit the cost and time.

Defense counsel had phone conversations, exchanged emails, and had multiple in-person meetings with OIT personnel to understand the Enterprise Vault.cloud storage system. Defense counsel identified the possible search terms and

the breadth of the undertaking the Plaintiffs demanded. One of many of the issues Defense counsel uncovered was that there were two named defendants that were not employed by DOC at the time that the emails were archived into Enterprise Vault.cloud. Thus, the emails for these individuals were stored separately and outside of Enterprise Vault.cloud. This meant that OIT would have to perform a separate search of each search term for these two custodians and then combine it with the results of the other custodians.

The Defendants previously provided all of the documents produced in the *Duke v. Dunn, et al* case, 4:14-CV-01952-VEH. In this production, Defendants provided over 250 emails which were retrieved from the search of email domains of thirteen custodians with the keywords "Lock," "Homicide," "Murder," "Assault," or "Force" where "St. Clair," "SCCF," and "SC" were also included.

This was deemed a sufficient search of emails in the *Duke* case which was a class action conditions case involving St. Clair in which most of the allegations were the same as those asserted in these cases. The search of these emails took a DOC employee countless hours to search and provide. Part of the motivation of the production of the *Duke* documents in these cases was to eliminate or reduce the burden on DOC employees of once again making these types of searches. The present cases involve inmate on inmate assaults which occurred over a three-month span in the first quarter of 2015. The breath of discovery in these cases should be

narrower than that of the *Duke* class action; however, the Plaintiffs in these cases seek vastly more expansive discovery. This is not proportional to these cases.

Defendants have endeavored from the beginning of this litigation to provide the Plaintiffs with all necessary documents related to their claims, but Defendants cannot agree to allow Plaintiffs to have *carte blanche* review through emails of high level DOC personnel concerning matters either completely unrelated to, or only tangentially associated with, the claims in these cases. The scope of requested searches is not reasonably limited in location (Plaintiffs seek emails related to all DOC institutions), nor limited in time (Plaintiffs seek emails over a five year period). Defendants have repeatedly expressed their concerns regarding attorney-client privileged documents, potential security issues at facilities, personal identification information regarding employees and inmates, and medical information regarding inmates. Plaintiffs refused to make any meaningful concessions to accommodate these concerns. Defendants have always been willing to provide relevant documents to Plaintiffs; however, the Defendants did not, and do not, want to incur the expense (both to OIT and internally) to review and produce a massive number of unnecessary documents.

## II.    History of Plaintiffs' Demands

1. <u>Initial Discovery Responses</u>

On March 5, 2018, Defendants provided their responses to Plaintiffs' Individualized Requests for Production. (See Responses attached as Exhibit D to Plaintiff's Motion). At this time, Defendants objected to Plaintiffs' requests stating: 1) they exceeded the permissible scope of discovery allowed by Federal Rule of Civil Procedure 26(b)(i) because they sought documents unrelated to any of the individuals involved in the allegations and which were generated years before and after the alleged assaults; 2) they sought information not relevant to any of the Plaintiffs' claims; 3) they were contrary to the parties' agreement regarding the scope of discovery when Defendants agreed to produce all of the *Dunn* documents; and 4) the requests were not proportional to the needs of the case and that the burden and expense of the proposed discovery substantially outweighed the likely alleged benefit to Plaintiffs. *Id.*

Further, Defendants stated "[t]he documents sought in Plaintiffs' Requests reside in the possession and custody of the DOC and not the DOC Defendants. However, because Plaintiffs have agreed to dismiss the DOC and State as Defendants, the DOC has agreed to produce certain relevant and responsive documents…" *Id.* The requested emails are not in the possession or control of the

Defendants, but instead are DOC documents. Nevertheless, Defendants have worked with the DOC to search these documents.[3]

Defendants still hold these positions. Defendants noted that Plaintiffs' requests were contrary to the agreement reached between counsel regarding the scope of discovery. Defense counsel explained that the intent of the discovery agreement was to prevent this exact situation where the Plaintiffs start from scratch with additional discovery about similar issues. If anything, the discovery in the current cases should be narrower than the scope of discovery in the *Duke* case.

### 2. Plaintiffs' First Proposal

After Defendants' detailed discovery objections, Plaintiffs waited over three months to provide their first "Proposal" regarding the search of Defendants' emails. (See Exhibit B to Plaintiffs' Motion at 1). Plaintiffs requested: 1) 51 different search terms for "All Defendants" (*Id.* at 3); 2) the search of the Plaintiffs' law firm's name, a misspelling of this name, and the term "lawsuit" (*Id.*); 3) 52 additional terms for 9 custodians (*Id.* at 4); and 4) every email including St. Clair (or variation), with "Classification;" "Leadership;" and the former warden's last name (*Id.* at 5). Among others, Plaintiffs' search request included the following terms for nine email accounts for a four-year period: "Security," "discipline/disciplinary," "violence,"

---

[3] It is nearly a year since the March 5, 2018 objections were raised and Plaintiffs still have not dismissed the State (or a deceased defendant) from these cases as previously agreed and memorialized in Defendants' Response to Discovery.

"contraband." OIT determined that Plaintiffs' initial search terms would require the search of approximately <u>429,000 documents</u>. These and other examples demonstrate the unreasonable nature of Plaintiffs' requests.

Defense counsel responded that such a search was "incredibly overly broad, unduly burdensome and not proportionate to the needs of the case." *Id.* at 7. Further Defense counsel stated that these searches were unreasonable in terms of cost and time. *Id.* They explained that the search terms were not reasonably limited to the issues in the cases or the time frame at issue. *Id.* Defense counsel also set out the ways that the search was way too broad and explained that they would never have agreed to the provide the documents from the *Duke* case if the Plaintiffs were going to demand the searches they now proposed. *Id.* Defense counsel reaffirmed this position two weeks later by explaining they could not agree to anything close to the search terms outlined in Plaintiffs' letter and that this was contrary to their agreement on discovery. *Id.* at 10.

On July 17, 2018, Defense counsel wrote Plaintiffs and once again stated the Defendants' position. *Id.* Defense counsel stated that a preliminary evaluation of the Plaintiffs' search terms (excluding the Plaintiffs' or alleged assailants' names) would require a search of <u>425,000 documents</u>. *Id.* Defense counsel further explained that the Plaintiffs already had the incident reports, duty officer reports, I&I reports, logs, and other documents which actually described the incidents which are the basis for

Plaintiffs' claims. *Id.* Defense counsel provided a counterproposal of running the names of the Plaintiffs and alleged assailants for the calendar year of 2015 (the year the incidents occurred). *Id.* Plaintiffs responded to Defense counsel's counterproposal two weeks later and said they would not agree to this. *Id.* at 16.

    3. <u>Continued Cooperation</u>

The parties had a call concerning this matter on August 6, 2018, and Plaintiffs followed up with an email on August 8, 2018 in which Plaintiffs "agree[d] to forgo email discovery" on eight defendants. *Id.* at 17. Seven of these eight custodians were lower level correctional officers and either did not have DOC email addresses or rarely used them. The other custodian (Lovelace) was the head of maintenance for all of DOC and not involved in issues related to the alleged attacks or their investigation.

On August 20, 2018, Defense counsel met with OIT and provided Plaintiffs with the permissible search terms within Enterprise Vault.cloud and responded to Plaintiffs' other concerns. *Id.* at 20. Defense counsel further informed Plaintiffs that "OIT explained that a search of the breath you have requested would be incredibly time consuming and the current personnel of DOC and/or OIT would not be capable of performing these searches." *Id.* Defense counsel explained that OIT recommended using an outside service to search the emails, but that "the cost for such an extensive search with the key words you have previously identified would

not be proportional to this litigation." *Id.* Defense counsel reiterated "[t]hese are not conditions cases but individual personal injury claims so we believe the search terms should be limited in time and scope to matters relevant to Plaintiffs' claim in these lawsuits." *Id.*

Defense counsel continued to try to work with Plaintiffs' counsel through emails and conference calls to limit the requested key words to terms that were actually related to Plaintiffs' claims. Defense counsel even arranged for Plaintiffs' counsel to speak directly to an employee of OIT that had the ability to run searches on Enterprise Vault.cloud. *Id.* at 32. OIT charges for their work so far exceeds $2,000.

4. Plaintiffs' Next Proposal

On October 28, 2018, Plaintiffs provided their second "[Proposed] Search and Review Protocol. . ." *Id.* at 29. In this version, Plaintiffs' counsel requested the search of Plaintiffs' and alleged attackers' names (and variations) along with 33 different search terms (many including root expanders) for nearly every defendant that had a DOC email address at the time of the alleged incidents. Except for some minor variations, the terms are essentially the same as those set forth in the final proposed search attached to the Motion.

On October 30, 2018, Defense counsel responded to this "proposal." Defense counsel pointed out that the individuals the Plaintiffs were not requesting a search

of email were from those that did not have DOC email addresses. *Id.* at 32. Defense counsel also set out that Plaintiffs' alleged concessions were not really concessions at all. *Id.* Defense counsel further explained that it had pointed out where it believed Plaintiffs' search terms were too broad and would produce hits on unnecessary documents. *Id.* Defense counsel explained that the privilege review and privilege log times proposed by Plaintiffs were not sufficient and set out times that Defense counsel was available to discuss these issues. *Id.* The parties held a telephone conference on this issue on or about November 2, 2018. Defense counsel further attempted to discuss this with Plaintiffs on a November 16, 2018 telephone conference. *Id.* at 38. The parties held another telephone conference on this matter on November 20, 2018.

     5.  Plaintiffs' "Second Proposal"

Over three weeks later, Plaintiffs' counsel sent their "Second Proposed Search," (which was actually the third proposed version Plaintiffs sent). *Id.* at 43. These terms were materially the same as the previous version and materially the same as the current version. On January 11, 2019, Defense counsel wrote Plaintiffs and explained (as they did in response to the first discovery requests) that "these are not conditions cases but individual personal injury claims and we believe the search terms should be limited in time and scope to matters relevant to Plaintiffs' claims in these lawsuits." *Id.* at 52. Defense counsel set out that the requests of the multitude

of search terms about general violence in all DOC institutions from over a dozen custodians' emails "would produce a very large number of almost entirely irrelevant emails." *Id.* Defense counsel explained that many of the search terms "would yield a high number of potentially attorney/client privileged documents making it very difficult and time consuming to comb though those documents (and create a privilege log) to ensure we are not producing protected information." *Id.* at 53.

In an effort to show Plaintiffs' counsel how many emails the parties were potentially dealing with, Defense counsel asked OIT to search the first group of requests (Section I.1.A.- the Plaintiffs and alleged attacker's names, AIS numbers, and "inmate" within two words of the last name for the Plaintiffs and alleged attackers). *Id.* Defense counsel explained that this produced nearly nine thousand hits, but when the hits with "inmate" within two words of the last names were excluded it produced nearly four thousand documents. *Id.* Defense counsel explained that this was too many emails to review on the short turnaround that Plaintiffs demanded, but that Defense counsel requested OIT to look for ways to refine the search to identify relevant documents and eliminate irrelevant documents. Defense counsel also said they were open to Plaintiffs' suggestions. *Id.* Defense counsel once again objected to these searches not meeting the proportionality requirements of Rule 26(b)(1). *Id.* Defense counsel further stated they were available the next couple of days to discuss this matter with Plaintiffs' counsel. *Id.*

Plaintiffs' counsel responded that day accusing the Defense counsel of only running "self-serving test searches" and requesting Defendants "run a test search of the remaining proposed search terms and disclose the hits for each search term" along with reviewing the four thousand results (for section I.1.A.). *Id.* at 54. Plaintiffs' counsel sent this email at 4:56 P.M. on Friday and demanded Defendants agree they would comply with Plaintiffs' demands by the following Monday and provide all of the requested information by the following Friday. *Id.* at 54.

The following Monday, Defense counsel stated it could not provide an answer to Plaintiffs' demands by the close of business. *Id.* at 55. Defense counsel objected to the characterization of the searches as "self-serving" and explained Defense counsel was attempting to get "an idea of the universe of documents we were dealing with so that we could make a more informed decision about how to move forward." *Id.* Defense counsel concluded by once again saying the Defendants wanted to continue to work together to find a workable solution. *Id.* Plaintiffs' counsel did not make any further attempts to contact Defense counsel prior to filing their Motion to Compel with their new proposed search terms[4]. The search terms the Plaintiffs now

---

[4] The parties exchanged approximately 30 emails and attended multiple depositions during this interim without a word concerning the status of this matter until less than an hour before the Motion to Compel was filed when Plaintiffs' counsel inadvertently emailed Defense counsel with a draft of the Motion meant for Plaintiffs' co-counsel.

propose were never even provided to the Defense counsel prior to the Plaintiffs' filing of their Motion.

6. Other Discovery Issues

Plaintiffs repeatedly state that Defendants did not timely respond to Plaintiffs' requests because at times it took Defendants "nearly a month" to respond. (Plaintiffs' Motion at p 9-10 (Doc. 82)). However, Defendants have requested documents which EJI produced in the *Duke* case but were not included in the documents Defendants received and produced. Due to the connection between Plaintiffs' counsel and EJI (EJI referred the cases in question to the Plaintiffs' counsel and assisted in providing an affidavit in this matter), Defense counsel has made multiple requests over a year time span concerning these documents and Plaintiffs still have not provided this information and recently advised they cannot guarantee production of the documents.

Due to the number of depositions in these case, number of documents, and number of counsel, there are many issues which have not been immediately addressed when raised on both sides. Defense counsel have attempted to work in good faith with Plaintiffs' counsel throughout these cases, such as providing deposition exhibits for Plaintiffs' counsel's deposition, and repeatedly pointing out where documents have previously been provided and once again providing them. Plaintiffs' counsel and Defense counsel exchange multiple emails each week;

however, when Defense counsel told Plaintiffs' counsel that Defense counsel would look into an issue, instead of Plaintiffs' counsel following up on the issue, Plaintiffs' counsel waited a month and filed its Motion to Compel.

Presumably Plaintiffs were attempting to raise this issue prior to the scheduled conference call regarding Culliver. Plaintiffs' counsel filed this Motion on the Friday afternoon prior to a Monday holiday and the Tuesday conference call on the Culliver issue. Had Plaintiffs' counsel called or sent an email to Defense counsel, Plaintiffs' counsel would have discovered that Defense counsel had requested OIT provide the number of hits for the overly broad email search terms and for OIT to produce sample emails from these searches. In fact, Defense counsel had received the breakdown of the number of emails for each search category and these sample emails from OIT prior to Plaintiffs' filing their Motion. Due to the large size of the samples provided by OIT, Defense counsel had not had the opportunity to ingest these documents into its litigation software to begin review of these documents. It should also be noted that Plaintiffs waited until the close of discovery to file the Motion, which demonstrates how irrelevant most of the requested searches are.

### III.    Requested Search Terms

1. Proposed Search Terms I.1.A. (as set out in Plaintiff's Third Proposal)

Since Plaintiffs never provided Defendants with the "Third Proposal" (which it filed as Exhibit A to its Motion) OIT ran the searches in the previous proposal.

From the first search (Section I.A.1.- the searches of the first and last names of Plaintiffs and alleged attackers, their AIS numbers, and "inmate" within 2 words of the Plaintiffs' and alleged attackers' last names) there were **8,945** hits. When the search term of "inmate" within 2 words of the last names of these individuals was excluded (as was revised in the "Third Proposal") there were **3,982** email hits. This is after duplicate emails were removed[5]. This number could be reduced by providing a temporal limitation on these searches (Plaintiffs demanded no temporal limitation) or running the first and last names within one word (/1) of each other instead of two (/2).

2. <u>Proposed Search Terms I.1.B.</u>

Plaintiffs' second set of search terms requests the Defendants search through the emails of fifteen Defendants from January 1, 2014 (over a year prior to any of the alleged attacks) to November 2015 (over six months since the last alleged attack). Plaintiffs do not limit these searches to St. Clair (where all the alleged attacks occurred). Plaintiffs request 21 search terms. Only one is limited to proximity of another word ("Duke /2 Dunn"). One of the search terms Defendants previously explained could not be performed through Enterprise Vault.cloud ("Blind /2 spot!" because it includes a root expander and a proximity to another word). Eight of these

---

[5] There are potentially duplicate emails in the emails of the two employees that were not employed by DOC at the time of the transition to Enterprise Vault.cloud and those employees whose emails were archived in that system because these emails are not "deduped."

search terms include root expanders which means they pick up variations of the words. Of note, "Rape!" brings up every duty officer report or other document which sets out an inmate in any DOC facilities' underlying conviction for "rape." This would also create hits for documents of any inmate alleging he or she was raped. Nearly all these allegations are not relevant to the present claims and, if not redacted, could unnecessarily disclose the name and other information of inmates alleging rape. Such disclosure would not be proper and would violate the privacy of these inmates.

The last four requested terms from this search are "Cheatham;" "Duke /2 Dunn;" "'Equal Justice Initiative;'" and "EJI." These terms would undoubtedly pick up a very large number of attorney client privileged documents from both previous litigation and these cases. To require Defense counsel to provide a privilege log including 1) the number of pages; 2) the type of document; 3) the date of the document; and 4) a description of the contents of the emails with these terms (as required in Plaintiffs' instructions to its Requests for Production attached as Exhibit C to Plaintiffs' Motion) would be so time consuming that it would not be proportional to these cases.

These search terms brought up **8,692** hits. This is not a proportional number of emails to review for privilege and other concerns and/or create a privilege log. Plaintiffs are not without documents to prosecute their cases. Plaintiffs have

thousands and thousands of documents from the *Dunn* discovery and those already produced in these cases. Plaintiffs have documents showing the level of violence at St. Clair Correctional Facility during the time at issue and DOC's attempts to correct this. Plaintiffs have documents showing the number of rapes and alleged rapes at St. Clair Correctional Facility. Plaintiffs have all of the *Dunn* documents. Plaintiffs also received additional documents from EJI. Plaintiffs proposed I.1.B. search terms are not proportional.

      3. Proposed Search Terms I.1.C.

Plaintiffs further demand production of all emails that contain "Loevy" or "Lovey" from February 3, 2017 to the present. Plaintiffs provide no explanation of why this is necessary or relevant to their claims. Upon a cursory review, nearly every hit from this search is for attorney-client documents. Plaintiffs' previous proposal (the last proposal provided to Defense counsel prior to the filing of Plaintiffs' Motion) also included a search for "lawsuit" with the Loevy search terms. When OIT ran these searches, they hit **1,987** emails. When Defense counsel searched the words "Loevy" and "Lovey" in these provided results it revealed **114** hits. Out of these hits, with the exception of letters Plaintiffs' counsel sent to St. Clair Correctional Facility to arrange meetings with their clients, it appears all of these were email correspondence with Defense counsel and Defendants regarding this matter. Specifically, many of these were emails related to responding to discovery

requests. These emails are privileged and not discoverable. It is unknown what legitimate purpose these requests could possibly have and how they relate to the claims and allegations in Plaintiffs' lawsuit. The only logical explanation is that this request is an attempt by Plaintiffs to inadvertently receive protected attorney client communications.

4. <u>Proposed Search Terms I.2.A.</u>

Plaintiffs next demand that Defendants search for 27 additional keywords in the emails for four of the same custodians whose emails were already searched with the terms set out above. The Plaintiffs "limit" this search from over a year prior to the first alleged attack to the present. Plaintiffs provide no reason why any of the emails following the last alleged attack (in early 2015) are relevant. Of the 27 additional search terms, Plaintiffs use root expanders for seven. Plaintiffs ask for all emails containing knife (or derivative thereof), weapon, stab (or derivative thereof), violent (or derivative thereof), shakedown, and rover. Plaintiffs further demand all emails concerning "audit & security," "safety & concern," and "safety & risk." Plaintiffs provide no reason as to why any of these emails following the alleged attacks would be relevant to Plaintiffs' claims.

Plaintiffs next turn their attention to all emails that contain "Media," "Press," "News!," Reporter," or "Article." There is no allegation of anything related to reporters or newspapers in any of the Complaints. None of these terms are remotely

relevant to these cases. Further Plaintiffs request all emails that include "Facebook." There are no allegations that Facebook related to any of the alleged attacks. Plaintiffs request every email which references an "Assessment." There are no allegations that assessments were related to the alleged assaults.

Plaintiffs request any email from these four custodians which includes "Sanders." Carl Sanders worked at St. Clair and is a named defendant; however, in choosing their search term, Plaintiffs failed to account for the fact that there were two inmates at St. Clair with the last name "Sanders." Searching for any email containing "Sanders" would provide many unrelated hits. Additionally, Plaintiffs demand the search for "Gordy." Angelia Gordy works at St. Clair and is a named defendant, but her husband is also a warden at another DOC facility. The inclusion of "Gordy" as a search term is likely to bring up emails completely unrelated to St. Clair. Plaintiffs also ask for emails with "Bonner." Presumably this is an effort to receive emails related to Michelle Bonner, a U.S. Department of Justice auditor. This search term is likely to lead to many emails which are protected by the attorney-client privilege and not relevant to these lawsuits.

None of these requested emails are limited to St. Clair. While all four custodians worked at St. Clair prior to, or during the alleged attacks, Warden Davenport and Warden Estes moved on and were wardens of other facilities after their time at St. Clair. Any emails containing these search terms after these wardens

left would only deal with other facilities and would not be relevant to any claims about St. Clair.

These overly broad search terms bring up **47,715** emails. These search terms are not narrowly tailored and a review of this number of emails is not proportional to these lawsuits.

5. Proposed Search Terms I.3.B.

Plaintiffs further demand the search of the former commissioner, the current commissioner, and Grantt Culliver's emails from over a year prior to the first alleged attack to the present. Plaintiffs request searches for variations of St. Clair and variations of knife, violence, stabbing, weapon, fix, plan, media, press, and reporter. From the *Duke* discovery Plaintiffs already have all the emails from these custodians related to St. Clair for lock, homicide, murder, assault, and force. Plaintiffs do not explain why every email where St. Clair is mentioned along with "fix" or "plan" is related to their claims. Further, as set out above, Plaintiffs provide no reason they should be entitled to all emails which contain St. Clair and mentioning media.

Plaintiffs conclude their search terms of these high-level DOC officials with "Davenport" and "Estes." Warden Davenport was the warden at the time or immediately prior to the alleged attacks and Warden Estes was the warden that took over after Warden Davenport. Both wardens moved on to be wardens of other facilities. Warden Davenport is now retired. Plaintiffs provide no reason why they

should be entitled to every email to or from these high-level DOC officials which simply mention the name of (or carbon copy) either Warden of St. Clair much less why they are entitled to them once these wardens left St. Clair.

These search terms yield **17,703** hits. Plaintiffs already have thousands of documents (including hundreds of emails) related to incidents of violence at St. Clair during the relevant period. Plaintiffs provide no explanation as to way they do not provide a reasonable temporal limitation for these searches. Plaintiffs also do not explain why they need emails regarding the media. Further, these search terms should hit any email sent by the current commissioner or former commissioner to two former wardens at St. Clair regarding ANY issue. These searches are not proportional.

6. Proposed Search Terms I.4.A.

Plaintiffs add for the first time the demand that Defendants search the former and current commissioners' accounts for emails that contain "Culliver" and variations of complaint, human resources, and harass along with "personnel" and "HR." OIT did not search these emails for these terms because Plaintiffs never provided these new search terms to Defendants prior to filing their Motion

7. The Proposed Search Terms are incredibly overbroad.

Based on the search terms Plaintiffs provided (in their "Second Proposal") OIT identified **84,737** potentially relevant emails. When "inmate ____" for each

Plaintiff and alleged attacker (in I.1.A.) are excluded and "lawsuit" (in I.1.C.) is excluded (as was done in the Plaintiffs' "Third Proposal"), but before the inclusion of any of the new Culliver requests, it appears that these searches would reveal **over 75,000 hits** (and growing based on when OIT runs the new searches). This is an unreasonable amount of emails for Defendants to review for privilege and other safety concerns. This is even more unreasonable when read in the context of the Plaintiffs' privilege review timeline in their "Third Proposal" which provides for only seven days for the Defense counsel to review the requested 75,000 emails, only 14 days to provide a privilege log, and 30 days to claw back emails that were inadvertently provided.

Plaintiffs claim that Defendants have superior knowledge of their emails, yet, Plaintiffs have received hundreds of Defendants' emails, incident reports, bed rosters, duty officer reports, duty logs and other related DOC documents. OIT, who facilitated all of the email searches, certainly is less familiar with the relevant documents than Plaintiffs. This is not a situation where the Plaintiffs are in the dark concerning the relevant documents. Plaintiffs have taken dozens of depositions and requested information regarding DOC documents. According to Plaintiffs' counsel's website, "Loevy & Loevy has extensive experience representing men and women in custody in jail or prison. We have filed over 100 cases concerning prisoners' rights…we take cases across the country and have represented prisoners or their

loved ones in states all over the country, including Louisiana, Kentucky, Maryland, **Alabama**, Arkansas, Wisconsin, and more. (www.loevy.com/prisoners-rights/ accessed 2/23/19) [emphasis added]. Yet, Plaintiffs claim they do not know the types of relevant documents or documents that the DOC maintains.

At the very beginning of the discussions regarding email searches, on July 17, 2017, Defense counsel agreed to provide all emails from 2015 which contained names of the Plaintiffs or their alleged attackers. (Ex. B to the Motion (Doc. 83) at 14). Plaintiffs dismissed this proposal outright stating that it would be vastly under-inclusive of the email communications pertinent to these cases. *Id.* at 16. Defense counsel repeatedly proposed providing these emails if they could be limited to the relevant emails and Plaintiffs held firm about needing emails with vastly overbroad search terms.

## IV. CONCLUSION

Contrary to what Plaintiffs' counsel stated in their Motion, the Defendants have not only provided emails to Plaintiffs, but Defendants have also searched the emails demanded by Plaintiffs. Defendants have worked with Plaintiffs through written letters, emails, and phone conversations to attempt to reach an agreeable solution to the issue of ESI. Plaintiffs have refused to come off their demands for nearly unfettered access to all of Defendants' emails. Defendants received a breakdown of the numbers of emails for different search categories and received

sample emails to determine if these searches could be limited <u>prior</u> to Plaintiffs filing their Motion to Compel. Defense counsel repeatedly told Plaintiffs' counsel which search terms were overly broad and unrelated to this litigation. Defense counsel's position has been consistent since March 2018, but Defendants have been open to a reasonable solution to the search of emails. Defense counsel have gone to great lengths to understand the Enterprise Vault.cloud system, to determine what search terms were used in the previous *Duke* litigation (of which Defense counsel was not representing any defendants), and to come to a compromise without necessitating the Court's intervention. Defense counsel were actually working on this issue (while attempting to balance all of the other issues in these cases) when they were blindsided by Plaintiffs' Motion to Compel.

Defendants are still willing to work with Plaintiffs to limit the searches to reasonable keywords which are relevant to Plaintiffs' claims. Defendants cannot agree to the overly broad demands in Plaintiffs' "Third Proposal" because review of over 75,000 emails when Defendants already have other sources for the same necessary information in not proportional to these cases.

Respectfully submitted,

*/s/ W. Allen Sheehan*

**ROBERT F. NORTHCUTT (ASB-9358-T79R)**
**W. ALLEN SHEEHAN (ASB-7274-L69S)**
**C. RICHARD HILL (ASB-0773-L72C)**
*Counsel for Defendants*

**CAPELL & HOWARD, P.C.**
Post Office Box 2069
Montgomery, AL 36102-2069
Email:  bob.northcutt@chlaw.com
          allen.sheehan@chlaw.com
          rick.hill@chlaw.com

*/s/ Bart G. Harmon*
**Bart G. Harmon (ASB-4157-R61B)**
*Counsel for Defendants*

**Alabama Department of Corrections**
Legal Division
PO Box 301501
Montgomery, AL 36130-1501
Bart.Harmon@doc.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February 2019 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

Russell Rourke Ainsworth
Ruth Zemel Brown
Theresa Kleinhaus
Sarah Grady
Roshan Bala Keen
Rachel Brady
Megan C. Pierce
**LOEVY & LOEVY**
311 N. Aberdeen Third Floor
Chicago, IL 60607

Henry F. Sherrod, III
**HENRY F. SHERROD, III, P.C.**
119 South Court Street
P.O. Box 606
Florence, AL  35631-0606

*/s/ W. Allen Sheehan*
Of Counsel